**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TV Azteca, S.A.B. de C.V., | Case No. 23-10385 (LGB) |
| Alleged Debtors.[1] | (Jointly Administered) |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF THE ALLEGED DEBTORS' MOTION TO DISMISS THE INVOLUNTARY CHAPTER 11 PETITIONS

---

[1] The Alleged Debtors are: TV Azteca, S.A.B. de C.V. ("TVA"); Alta Empresa, S.A. de C.V.; Asesoría Especializada En Aviación, S.A. de C.V.; Equipo de Futbol Mazatlán, S.A. de C.V.; Producciones Dopamina, S.A. de C.V.; Azteca Records, S.A. de C.V.; Ganador Azteca, S.A.P.I. de C.V.; Operadora Mexicana De Televisión, S.A. de C.V.; Azteca Sport Rights LLC; Producciones Azteca Digital, S.A. de C.V.; Producciones Especializadas, S.A. de C.V.; Productora de Televisión Regional de TV Azteca, S.A. de C.V.; Promotora de Futbol Rojinegros, S.A. de C.V.; Mazatlán Promotora de Futbol, S.A. de C.V.; Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V.; S.C.I. de México, S.A. de C.V.; Servicios Aéreos Noticiosos, S.A. de C.V.; Servicios Especializados TAZ, S.A. de C.V.; Servicios y Mantenimiento del Futuro en Televisión, S.A. de C.V.; Corporación de Asesoría Técnica y de Producción, S.A. de C.V.; Editorial Mandarina, S.A. de C.V.; Multimedia, Espectáculos y Atracciones, S.A. de C.V.; Servicios Foráneos de Administración, S.A. de C.V.; Servicios Locales De Producción, S.A. de C.V.; Azteca International Corporation; Stations Group, LLC; TV Azteca Honduras, S.A. de C.V; Comercializadora de Televisión de Honduras, S.A. de C.V.; Incotel S.A.; TVA Guatemala S.A; Lasimex, S.A. de C.V.; TV Azteca Global, S.L.U.; Azteca Comunicaciones Perú, S.A.C.; Redes Opticas, S.A.C; Televisora del Valle de México, S.A.P.I. de C.V.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

I.   The Involuntary Petitions Should Be Dismissed Pursuant to Section 305(a)(1). ................ 4

     A.   The Petitioning Creditors Fail to Rebut the High Risk of Futility .......................... 4

     B.   The Opposition Cannot Distinguish the Alleged Debtors' On-Point Cases. .......... 9

II.  *Forum Non Conveniens* Also Supports Dismissal of the Involuntary Petitions. ............... 11

III. Dismissal for Cause under Section 1112(b) of the Bankruptcy Code Is Warranted. ....... 13

IV.  The Petitioning Creditors Lack Standing under Section 303(b)(1). ................................. 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bd. of Dirs. of Multicanal S.A.*,
  314 B.R. 486 (Bankr. S.D.N.Y. 2004) ................................................................................10

*In re Certa Dose, Inc.*,
  2021 WL 5177376 (Bankr. S.D.N.Y. 2021) ........................................................................13

*In re Euro-American Lodging Corp.*,
  357 B.R. 700 (Bankr. S.D.N.Y. 2007) ................................................................................15

*In re Grupo Aeroméxico, S.A.B. de C.V.*,
  Case No. 20-11563 (Bankr. S.D.N.Y. 2020) ........................................................................6

*In re Grupo Posadas, S.A.B. de C.V.*,
  Case No. 21-11831 (Bankr. S.D.N.Y. 2021) ........................................................................6

*In re Honolulu Affordable Hous. Partners, LLC*,
  No. 15-00146, 2015 WL 2203473 (Bankr. D. Haw. May 7, 2015) ....................................14

*In re Koffee Kup Bakery, Inc.*,
  No. 21-10168, 2022 WL 141516 (Bankr. D. Vt. Jan. 14, 2022) ........................................15

*In re Manolo Blahnik USA, Ltd.*,
  619 B.R. 81 (S.D.N.Y. 2020) .............................................................................................15

*In re Maxcom Telecomunicaciones, S.A.B. de C.V.*,
  Case No. 19-23491 (Bankr. S.D.N.Y. 2019) ........................................................................6

*In re Navient Sol. LLC*,
  No. 21-CV-2897 (JGK), 2022 WL 863409 (S.D.N.Y. Mar. 23, 2022) ..............................14

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013) ................................................................................13

*In re Satellites Mexicanos, S.A.*,
  Case No. 06-11868 (Bankr. S.D.N.Y. 2006) .....................................................................5, 6

*In re Satellites Mexicanos, S.A.*,
  Case No. 11-11035 (Bankr. D. Del. 2011) ........................................................................5, 6

*In re Spanish Cay Co., Ltd.*,
  161 B.R. 715 (Bankr. S.D. Fla. 1993) ................................................................................10

*In re Xacur*,
    219 B.R. 956 (Bankr. S.D. Tex. 1998) .................................................................................10

**Statutes**

**Bankruptcy Abuse Prevention and Consumer Protection Act of 2005**..........................................14

Bankruptcy Code § 303(b)(1) ..................................................................................................14, 15

Bankruptcy Code § 305(a)(1) ..............................................................................................2, 4, 9, 10

Bankruptcy Code § 1112(b)...........................................................................................................3, 13

Mexican Insolvency Law § 293 ........................................................................................................1

## PRELIMINARY STATEMENT[2]

1.  TVA is a Mexican company that cannot be successfully restructured in an involuntary chapter 11 case. No court has ever ordered relief placing a Mexican company involuntarily into a chapter 11 bankruptcy, and the Petitioning Creditors have offered no persuasive reason why this Court should be the first.

2.  As set forth in the two declarations of the Alleged Debtors' expert, Professor Luis Manuel Méjan, Mexican Insolvency Law ("LCM") does not permit TVA to be reorganized in this Court: LCM section 293 requires a *Concurso* proceeding before recognizing a foreign insolvency proceeding of a company with an establishment in Mexico. Given the overwhelming Mexican character of TVA, the LCM will substantively govern the restructuring. TVA is the second largest broadcaster in Mexico, with substantially all of its employees and facilities in Mexico (and none in the United States), where it generates more than 95% of its revenue and operates under a series of licenses granted by the IFT, the Mexican telecommunications authority. Thus, TVA indisputably has an "establishment" in Mexico, and the LCM will substantively govern any restructuring of the company. TVA does not have any "establishment" in the United States, which also removes any possible basis in the LCM to grant recognition to these proceedings whether as a foreign main proceeding, a foreign non-main proceeding, or otherwise. These proceedings are therefore doomed to fail as a matter of Mexican law.

3.  The Petitioning Creditors took the drastic step of filing these petitions to further their own parochial interests in moving their debt claims to this forum. The Petitioning Creditors apparently prefer a chapter 11 to a *Concurso* proceeding and to the prior action they filed in

---

[2] Terms not otherwise defined herein shall have the meaning ascribed in the Alleged Debtors' opening memorandum of law ("MOL") or in the Petitioning Creditors' opposition brief ("Opposition" or "Opp.").

New York. But their preference does not justify a futile and costly involuntary chapter 11 restructuring that would be harmful to the Alleged Debtors' estates and to other creditors.

4. Nothing in the Opposition suggests that a chapter 11 case is feasible. The Opposition does not cite a single case where a Mexican court granted recognition to a chapter 11 restructuring of a Mexican company. There is none. Although the Opposition cites other chapter 11 cases involving Mexican companies (Opp. ¶ 2), none resulted in an *involuntary* chapter 11 restructuring. Each example identified involved either plans with support from all Mexican stakeholders or only restructured U.S. obligations and thus did not require recognition or enforcement in Mexico. But there is no way to circumvent Mexican law here: the Alleged Debtors object to a chapter 11 case, and no Mexican stakeholders have consented to it. Those stakeholders include Mexican creditors, equity owners, and the Mexican government—including IFT, which is required to participate in TVA's reorganization. Unlike the examples cited, recognition and enforcement in Mexico will be necessary to effectuate a chapter 11 plan. And contrary to the flawed opinions of the Petitioning Creditors' expert, Jesús Guerra, in the event that recognition is sought in Mexico, a Mexican court would not simply accept or tinker with the chapter 11 plan, but rather would begin anew in a *Concurso* proceeding, rendering any restructuring in this Court futile. As a result, dismissal under Section 305(a)(1) of the Bankruptcy Code is warranted.

5. The Petitioning Creditors wrongly argue that they have no alternative forum. Mexican law permits the commencement of an involuntary *Concurso*. Nothing has prevented or prevents Petitioning Creditors from commencing one. As shown in the Méjan Reply Declaration, the injunctive actions cited in the Opposition (which are only preliminary in nature) prevent debt collection actions, not a *Concurso*. If Petitioning Creditors in fact have an interest in a reorganization—as opposed to advancing their individual claims—they can proceed in Mexico.

2

6.  Regarding their own claims, Petitioning Creditors also have an alternative forum in the United States: the pre-petition action they filed before Judge Gardephe. Petitioning Creditors, not TVA, derailed that lawsuit with the automatic stay before the District Court could rule on their motion for summary judgment. If the Involuntary Petitions are dismissed, that action will continue. Related litigations in Mexico are already continuing without interruption, and the Petitioning Creditors and the Indenture Trustee have been defending themselves in those actions. Those cases have in no way inhibited the Petitioning Creditors in the United States.

7.  *Forum non conveniens* dismissal is also warranted. Day-to-day administration of these chapter 11 cases would be unwieldy because **all** of the Alleged Debtors' employees, documents, and regulatory authorities are in Mexico and because orders of this Court cannot be enforced. Questions of Mexican law will require constant adjudication, as they have in this motion. For the reasons explained in the Méjan Reply Declaration, the Involuntary Petitions could have been filed in Mexico. Courts routinely dismiss cases on *forum non conveniens* grounds where, as here, orders cannot be enforced. All of the *forum non conveniens* factors compel dismissal here.

8.  These cases should also be dismissed for cause under Section 1112(b). The Opposition demonstrates that the involuntary petitions were not filed for any restructuring purpose, but rather to gain leverage in collecting the Petitioning Creditors' disputed claims. The only other creditor the Opposition cites is Diamond, a Dutch company that is TVA's litigation adversary in New York and in Mexico. Although the Petitioning Creditors assert a common interest with Diamond, it has appeared in these cases only to file a reservation of rights and protect its litigation position. Diamond has not supported the chapter 11 cases, nor has any other creditor.

9.  Finally, the Petitioning Creditors lack standing as their debt is the subject of a bona fide dispute regarding a Redemption Premium for which they directed an Indenture Trustee to sue.

3

10. The Involuntary Petitions should be dismissed.

## ARGUMENT

**I. The Involuntary Petitions Should Be Dismissed Pursuant to Section 305(a)(1).**

11. Discretionary abstention is manifestly appropriate under Section 305(a)(1) for four principal reasons: (1) the Petitioning Creditors have available alternatives for debt collection in New York and, if desired, a *Concurso* in Mexico; (2) a chapter 11 poses an unacceptably high risk of futility and nonenforcement in Mexico, where the Alleged Debtors' assets are located; (3) a comprehensive restructuring of the Alleged Debtors will be more expensive and less convenient for most interested parties in the United States as opposed to Mexico; and (4) the Petitioning Creditors commenced these proceedings for the improper purpose of leveraging those burdens to gain advantage in their self-serving debt collection efforts. (MOL ¶¶ 40-51.)

**A. The Petitioning Creditors Fail to Rebut the High Risk of Futility.**

12. Neither the Petitioning Creditors nor their expert, Mr. Guerra, have identified a single case in which a Mexican court has enforced an order of an involuntary chapter 11 proceeding against a Mexican company. And with good reason: there is none.

13. The Petitioning Creditors' argument that a chapter 11 plan is "capable of being recognized in Mexico," (Opp. ¶ 39), rests on Mr. Guerra's unsubstantiated opinion that a Mexican court would either consider these chapter 11 cases a "foreign main proceeding" and "fully enforce a confirmed plan," or alternatively consider them a "foreign non-main proceeding," and "rely on a confirmed plan as the starting point for restructuring efforts in Mexico." (Guerra Decl. ¶ 51.)[3] As the Méjan Reply Declaration explains, Mr. Guerra's opinions are inconsistent with Mexican

---

[3] Mr. Guerra is far from certain in his opinion that a plan would be recognized in Mexico. He says only that there is a "significant possibility" that a Mexican court would grant recognition and not necessarily "reject the entire plan and start from scratch." (*See* Guerra Decl. ¶¶ 42, 55.) That is a thin reed indeed for the Petitioning Creditors to advance an unprecedented procedure. In any event, even this hedged opinion misstates Mexican law.

4

law, which requires any reorganization of the Alleged Debtors to be conducted in Mexico. (Méjan Reply Decl. ¶¶ 57-60.)

14. The Opposition attempts to elide the absence of precedent by pointing the Court to four Mexican companies that *voluntarily* reorganized in the U.S.: Aeroméxico, SatMex, Maxcom, and Grupo Posadas. (Opp. ¶ 40; Guerra Decl. ¶¶ 33-36.) These cases provide no support for the proposition that a chapter 11 plan in this case would be enforceable in Mexico.

15. None of the cases cited in the Opposition involved recognition in Mexico. Each company structured its chapter 11 case to bypass the problems that would arise under Mexican law. Each case involved voluntary filings by the Mexican debtors and confirmed chapter 11 plans that either had the requisite consent of all Mexican stakeholders or did not modify rights in Mexico. As a result, there was no need to enforce those plans in Mexico or obtain recognition in Mexico. In contrast, the Alleged Debtors do not consent to restructuring proceedings here, and TVA's shareholders surely will not vote to approve a plan to equitize U.S. bondholder debt, which would be required under Mexican law to effectuate the purported plan structure proposed by the Petitioning Creditors in the Opposition. (*See* Opp. ¶ 46; Méjan Reply Decl. ¶ 40; Rodríguez Reply Decl. ¶ 16.)

16. The four restructurings cited in the Opposition are all readily distinguishable:

- **SatMex.**[4] SatMex reorganized twice. In 2005, U.S. bondholders filed an involuntary chapter 11, which SatMex moved to dismiss on July 5.[5] That motion was granted because a *Concurso* proceeding was commenced in Mexico, which became the primary restructuring proceeding through which a plan was confirmed. After the *Concurso* proceeding, SatMex filed a prepackaged chapter 11 case in the U.S. to implement a portion of its *Concurso* plan that restructured U.S. notes. The prepackaged chapter 11 was supported by 100% of SatMex's equity holders, including the Mexican government, and did not modify any rights in Mexico.[6] In

---

[4] *In re Satellites Mexicanos, S.A.*, Case No. 06-11868 (Bankr. S.D.N.Y. 2006); *In re Satellites Mexicanos, S.A.*, Case No. 11-11035 (Bankr. D. Del. 2011).

[5] *In re Satellites Mexicanos, S.A,* Case No. 06-11868, Dkt. No. 18 (Disclosure Statement), at 14.

[6] *Id.* at 1, 3, 8, 14-15.

5

2011, SatMex filed a second prepackaged chapter 11 case that again modified U.S. obligations, but not its Mexican obligations. The 2011 prepackaged chapter 11 was also supported by 100% of equity holders.[7] Neither chapter 11 case was ever recognized in any proceeding in Mexico.

- **Aeroméxico**.[8] Aeroméxico filed its chapter 11 case in 2020 during the height of the COVID-19 pandemic at a time when Mexican bankruptcy courts had shut down entirely. The company needed a $1 billion DIP loan, and to obtain that loan the lenders required the filing of a chapter 11 case in the U.S. Aeroméxico sought and obtained Mexican shareholder approval for its chapter 11 plan, which was necessary under Mexican law to modify its shareholders' rights. The shareholders approved (i) amendments to the company's bylaws to permit the transactions contemplated by the chapter 11 plan, (ii) all acts required to implement the restructurings; (iii) issuance of new stock pursuant to the plan, and (iv) equitization of certain creditor claims in exchange for new stock.[9] The debtors did not seek recognition of the chapter 11 cases in Mexico.

- **Maxcom**.[10] Maxcom filed for chapter 11 to implement a prepackaged plan of reorganization that solely restructured New York law notes and no other obligations of the company.[11] The plan impaired the U.S. notes only and no other claims (including equity).[12] No rights in Mexico were modified, and the debtors did not seek recognition in Mexico.

- **Grupo Posadas**.[13] Similar to Maxcom, Grupo Posadas filed a prepackaged chapter 11 case that restructured U.S. law-governed notes only and did not impair any rights, including equity interests, in Mexico.[14] As in Maxcom, no rights or interests in Mexico were modified, and the debtors did not seek recognition in Mexico.

17. Thus, none of these cases provide any support for proceeding with a chapter 11 here. The conclusory statement in the Opposition that "it does not stand to reason" that these companies "would opt to engage in multi-million dollar restructurings in U.S. bankruptcy court if none of those orders and judgments . . . were enforceable" (¶ 40), and the similar claim in

---

[7] *In re Satellites Mexicanos, S.A.*, Case No. 11-11035, Dkt. No. 3 (Disclosure Statement), at 20.

[8] *In re Grupo Aeroméxico, S.A.B. de C.V.*, Case No. 20-11563 (Bankr. S.D.N.Y. 2020).

[9] *Id.*, Dkt. No. 2286 (Disclosure Statement), at 40-41.

[10] *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, Case No. 19-23491 (Bankr. S.D.N.Y. 2019).

[11] *Id.*, Dkt. No. 4 (First Day Declaration) ¶¶ 17, 103.

[12] *Id.*, Dkt. No. 11 (Notice of Filing of (I) Offering Memorandum and Consent Solicitation Statement, (II) First Supplement to Offering Memorandum and Consent Solicitation Statement, and (III) Second Supplement to Offering Memorandum and Consent Solicitation Statemen), Annex B (Chapter 11 Plan of Reorganization)), at 10.

[13] *In re Grupo Posadas, S.A.B. de C.V.*, Case No. 21-11831 (Bankr. S.D.N.Y. 2021).

[14] *Id.*, Dkt. No. 3 (Disclosure Statement) at 17-18 and Exhibit A to Disclosure Statement (Debtors' Joint Prepackaged Chapter 11 Plan), at 11-12.

Mr. Guerra's Declaration (¶ 47),[15] completely ignore the underlying facts and circumstances of these cases and the critical difference between these cases and the circumstances here. It does stand to reason that these Mexican companies would pursue modifications exclusively to U.S. creditor rights in chapter 11 cases, but avoid modifying rights in Mexico through chapter 11 plans that could not be recognized or enforced. Here, a restructuring would require recognition in Mexico, which would not be granted by a Mexican court. Indeed, that these chapter 11 cases modified the rights of only U.S. creditors, and not any Mexican creditors or shareholders, suggests an understanding that the latter would not have been recognized or enforced.

18. Equally baseless is Mr. Guerra's claim that because three of the 34 Alleged Debtors are incorporated in the United States, that "may . . . be sufficient for the *Concurso* Court to recognize the Chapter 11 cases as a 'foreign main proceeding' with respect to each of the Debtors." (Guerra Decl. ¶ 42.) This equivocal assertion is not supported by any analysis of the articles in the LCM regarding the determination of COMI; it is based on the irrelevant observation that a Mexican Bankruptcy Court "presiding over the *Concurso* of one entity that belongs to a corporate group will also hear the *Concurso* of affiliated entities that are subject to a *Concurso* commenced as a result of an Involuntary Petition." (*Id.* ¶ 40.) This has nothing to do with the statutory definition of COMI and is not supported by any precedent. As Professor Méjan explains, Mr. Guerra's opinion is contrary to the LCM, which makes clear that the determination of whether a foreign proceeding will be a "main" or "non-main" proceeding, if at all, is determined on an entity-by-entity basis for each alleged debtor. (Méjan Reply Decl. ¶ 56.)

---

[15] Guerra Decl. ¶ 47 ("It is illogical that these companies would have filed for chapter 11 in the United States, undertaken substantial expenses in pursuing reorganization and confirmed a chapter 11 plan of reorganization all at the risk of a plan being declared unenforceable in Mexico. . . .").

7

19. Similarly, Mr. Guerra provides no basis to support his conclusion that it is "highly likely" that a Mexican court would find that each of the Alleged Debtors has an "establishment" in the United States sufficient to make these chapter 11 cases "foreign non-main proceedings" under Mexican law. (Guerra Decl. ¶¶ 42, 45.) Thirty-one of the 34 Alleged Debtors are not incorporated here, have no employees here, and have no operations in the U.S. (Rodríguez Decl. ¶¶ 4, 6, 15, 22.) Although three of the Alleged Debtors are incorporated in the U.S., none has any "place of operations where the merchant conducts non-transitory economic activity with human means and assets or services," which Mr. Guerra concedes is the definition of "establishment" under the LCM.[16] (*See* Guerra Decl. ¶ 45) As Professor Méjan explains, the consequences of having no establishment in the U.S. is that, from the standpoint of *Concursos* law, the foreign proceeding is neither a "main" nor a "non-main" proceeding and therefore does not meet a basic requirement necessary for recognition under the Model Law. (Méjan Reply Decl. ¶ 7.)

20. As Professor Méjan explained in his opening declaration, while the *Concursos* law had incorporated much of the UNCITRAL Model Law on Cross-Border Insolvency, it contained a significant modification in Article 293 of the LCM that any corporation with an "establishment" in Mexico was required to reorganize in a *Concurso* proceeding under the *Concursos* law. (Méjan Decl. ¶ 49.) Although Mr. Guerra acknowledges that the Model Law was adopted in Mexico with "some modifications," (Guerra Decl. ¶ 29), he does not identify or explain those modifications,

---

[16] The facts demonstrate that the Alleged Debtors' contacts with the U.S. are *de minimis* at best. Other than one member of one entity's board of managers, all of the employees who work for the U.S. subsidiaries are located in Mexico. While the Opposition attempts to claim that TVA has "de facto" offices and employees in the United States working for two other companies (GSI Management USA LLC and Castillo LLC), those threadbare allegations are not only factually wrong—those entities are not "de facto" offices of TVA—they also demonstrate the desperation by the Petitioning Creditors to manufacture greater connections to the U.S. (*See* Rodríguez Reply Decl. ¶¶ 12-14.) And as Mr. Rodríguez explains in his Reply Declaration, the Opposition similarly overstates the U.S.-related contracts to which any Alleged Debtors is a party both in number and revenue. (*See id.* ¶ 8.)

8

and does not dispute Professor Méjan's conclusion that Article 293 requires TVA, as a company with an establishment in Mexico, to be reorganized in a *Concurso* proceeding in Mexico.

21.    Finally, Mr. Guerra's opinion that a confirmed chapter 11 plan could serve as a "starting point" for a future *Concurso* proceeding is entitled to no weight.  First, as Mr. Guerra concedes, the *Concursos* law requires an agreement between the debtor and creditors.  (*Id.* ¶ 19.) A coercive plan to which the debtor objects to is not an agreement.  Second, the plan proposed by the Petitioning Creditors to equitize their own claims would impair the equity interests of TVA's existing shareholders.  (*See id.* ¶¶ 38, 51.)  That is not possible under Mexican law without shareholder approval.  (Méjan Reply Decl. ¶ 10.)  And there is no reason to believe that shareholder support will be forthcoming.  (Rodríguez Reply Decl. ¶ 16.)

22.    Ultimately, Mr. Guerra fails to provide any basis to conclude that a chapter 11 plan in these cases would be enforceable in Mexico.  It plainly would not be, making these proceedings objectively futile and, therefore, subject to dismissal under Section 305(a)(1).

### B.    The Opposition Cannot Distinguish the Alleged Debtors' On-Point Cases.

23.    As set forth in the Alleged Debtors' opening brief, courts routinely reach the common sense conclusion that when a U.S. bankruptcy case would be objectively futile because it cannot be enforced against foreign debtors and creditors, dismissal is warranted under Section 305(a)(1). (MOL ¶ 47.)  The Opposition's attempt to distinguish the numerous cases cited in the Alleged Debtors' opening brief fail.

24.    The Opposition first purports to distinguish *In re Xacur* on the grounds that the petitioning creditors in that case were Mexican banks, the notes at issue were governed by Mexican law, and the action was against a Mexican citizen.  (Opp. ¶ 47.)  But those facts were not the basis for the court's abstention ruling.  *See In re Xacur*, 219 B.R. 956, 968–69 (Bankr. S.D. Tex. 1998). Also, one of the petitioning creditors in *Xacur* was a California bank.  (*See id.* at 960.)  Rather, the

9

court dismissed the case under Section 305(a)(1) because (i) a Mexican court "may not recognize the automatic stay and . . . the enforceability of orders issued from a United States bankruptcy court," (ii) there were "pending Mexican lawsuits" to collect on the contested debt, (iii) there was "no impediment inhibiting the petitioning creditors from filing an involuntary bankruptcy . . . in Mexico," and (iv) a U.S. proceeding would not result in "economical and expeditious administration" of the bankruptcy estate. *Id.* at 968–69. All of those same facts are present here.

25. The Opposition's purported distinctions of the other cases are equally unavailing:

- *In re Spanish Cay Co., Ltd.*, 161 B.R. 715 (Bankr. S.D. Fla. 1993): The Petitioning Creditors argue that the petitioners in *Spanish Cay* were foreign entities whose contractual rights were governed by foreign law. (Opp. ¶ 47.) As in *Xacur*, those were not the dispositive facts. The facts that "weigh[ed] heavily in favor of abstention" were that the "Debtor [was] a Bahamian company"; "its principal asset is real property located in Bahamas"; "[s]everal of Debtor's creditors are Bahamian entities, including the Bahamian government"; and a Bahamian insolvency expert testified that orders of the United States bankruptcy court would not be enforceable in the Bahamas. *See* 161 B.R. at 723. The court found that a reorganization through chapter 11 "most likely would be futile," and dismissed. *Id.* at 725–26.

- *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486 (Bankr. S.D.N.Y. 2004): The Opposition purports to distinguish *Multicanal* by arguing that it "had no operations or ongoing business" and "no assets and only one account worth approximately $9,500 in the United States," whereas the Alleged Debtors purportedly have "significant connections to, and assets in, the United States." (Opp. ¶ 48). *Multicanal*, like TVA, raised debt under U.S.-law governed notes, but in any event the key holding in *Multicanal* is that an involuntary petition should be dismissed if it is objectively futile and cannot reorganize the debtor, which is precisely the case here. *Multicanal*, 314 B.R. at 523.[17]

---

[17] The Opposition argues that *Multicanal*'s holding has been "called into question" by *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 252 (S.D.N.Y. 2004) ("*Globopar*"). *Globopar*—on facts similar to those here and in *Multicanal*—concluded that a foreign debtor facing involuntary petitions represented a "strong candidate for abstention" in its remand order to the bankruptcy court, but cautioned that an adequate record is necessary to support abstention and a petition should not be dismissed on the basis of "hypothetical" concerns about foreign courts. *Id.* at 255-56. Here, the obstacles presented by Mexican law are not "hypothetical," as detailed in Professor Méjan's two reports.

10

**II.    *Forum Non Conveniens* Also Supports Dismissal of the Involuntary Petitions.**

26. As demonstrated in the Alleged Debtors' opening brief, all factors that guide a court's application of the doctrine of *forum non conveniens* weigh in favor of dismissal of these involuntary petitions. The Opposition does not demonstrate otherwise.

27. Mexico is not only an adequate forum, but a necessary one. (*See* MOL ¶¶ 3, 54; *see also* Méjan Reply Decl. Section III.) The Opposition does not seriously dispute that proceedings will be necessary there, just the extent to which those proceedings will defer to these chapter 11 cases. (*See* Opp. ¶¶ 42, 45–46.)

28. The Alleged Debtors are amenable to service of process in Mexico, and accordingly Mexico is an adequate forum in which to conduct insolvency proceedings. (*See* MOL ¶¶ 54–55.) Numerous U.S. courts have found that Mexican *Concurso* proceedings fairly and adequately protect the rights of parties-in-interest, (*id.* ¶ 56), which the Opposition does not dispute.

29. A principal argument by the Petitioning Creditors in opposition to *forum non conveniens* dismissal is that the First ▮▮▮▮▮▮▮ Injunctions will prevent them from commencing an involuntary *Concurso* proceeding in Mexico. (Opp. ¶¶ 65-66.) That is wrong, as the Méjan Reply Declaration explains. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a *Concurso* proceeding—like a chapter 11 proceeding here—is not a debt collection action. (Méjan Reply Decl. ¶¶ 62–63.) Under the LCM, the right to petition for an involuntary *Concurso* proceeding is a right that cannot be restrained or impaired by an injunction. (*Id.* ¶¶ 4, 64, 66.) Even if it were an impediment (which it is not), the Mexican bankruptcy court would have the authority to lift the Injunctions. (*Id.* ¶¶ 65–66.) Moreover, the Petitioning Creditors concede they would be required to enforce their rights eventually in Mexico, and they do not adequately explain how that action can proceed in the face

11

of the Injunctions, while arguing that an involuntary *Concurso* proceeding cannot.[18] (Opp. ¶¶ 45, 52.) There simply is no impediment to the initiation of an involuntary *Concurso* proceeding here.

30. Nor is the Petitioning Creditors' choice of a U.S. forum entitled to any deference, because each of them is a foreign fund. (MOL ¶¶ 36, 58.) Indeed, the offering was "available only to non-U.S. persons." (Clareman Decl. Ex. O at 1.) Although the Petitioning Creditors claim that the "majority of the Petitioning Creditors have their principal place of business in the United States," (Opp. ¶ 55), that is not accurate. The two entities that have their principal places of business in the U.S. are investment advisors to the Petitioning Creditors, and are neither parties nor petitioners in this case. (*See* Opp. at ¶ 34; Qureshi Decl., Ex. 56 at 153; *id.* Ex. 57.)[19]

31. Petitioning Creditors' argument based on the forum selection clause, (Opp. ¶ 60), is not supported by any decision from any court. An involuntary plenary bankruptcy would restructure the Alleged Debtors' assets, debt, and equity worldwide—all of which are overwhelmingly in Mexico. A forum selection clause in one contract with one creditor group cannot drag all of those interests into New York and out of the more convenient forum in Mexico. Indeed, numerous other agreements, such as the secured credit agreement with Banco Azteca and the government concessions that are the foundation of TVA's entire business, contain Mexican forum selection clauses.[20] (Clareman Reply Decl. Ex. B at 15; *id.* Ex. D at 7; Rodriguez Decl. Ex. D at 7; *id.* Ex. E at 7; *id.* Ex. F at 8, *id.* Ex. G at 7, *id.* Ex. H at 8; *id.* Ex. I at 8.)

---

[18] The Opposition also "question[s] the ease" with which the Alleged Debtors can be served in Mexico based on the experience of Diamond (Opp. ¶ 65.) But Diamond has been litigating with TVA over appropriate service in Mexico regarding a New York action, not a Mexican action.

[19] In *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, (cited in Opp. ¶¶ 55–56, 60), unlike here, the New York-based investment advisor *was a plaintiff.* No. 15 CIV. 2739 (LAP), 2020 WL 3034824, at *6 (S.D.N.Y. June 5, 2020).

[20] *Skanga Energy & Marine Ltd.* v. *Arevenca S.A.* (cited in Opp. ¶¶ 58, 64), involved a bilateral litigation, not a bankruptcy, in which significant discovery was expected from New York financial institutions and regarding defendant's U.S. operations. 875 F. Supp. 2d 264, 267 (S.D.N.Y. 2012*), aff'd sub nom. Skanga Energy & Marine Ltd.* v. *Petroleos de Venezuela S.A.*, 522 F. App'x 88 (2d Cir. 2013). That is not the case here.

32. Courts in this jurisdiction routinely hold that a forum selection clause does not dictate the choice of venue in a bankruptcy proceeding. This Court addressed that issue in *In re Certa Dose, Inc.*, 2021 WL 5177376, at *16 (Bankr. S.D.N.Y. 2021), which the Alleged Debtors cited. (*See* MOL ¶ 61.) There, this Court concluded that "the public interest in centralizing bankruptcy proceedings generally outweighs the public and private interests in enforcing a forum selection clause." *In re Certa Dose, Inc.*, 2021 WL 5177376, at *16. The same conclusion is compelled here.

33. If the Alleged Debtors are subjected to restructuring, the restructuring belongs in Mexico where it can be efficiently and fully adjudicated. The forum selection clause is outweighed by the collective interests that support having an insolvency proceeding—if at all—in Mexico.[21]

**III.    Dismissal for Cause under Section 1112(b) of the Bankruptcy Code Is Warranted.**

34. The Petitioning Creditors' arguments that these bankruptcy cases are more than a two-party dispute are also unconvincing. (Opp. at ¶ 77.) No creditors or other parties-in-interest support these involuntary petitions, or have advocated for TVA's involuntary bankruptcy. As a result, dismissal for cause under Section 1112(b) is appropriate.

35. The Petitioning Creditors' contention that they face a "significant risk of prejudice" from dismissal is unsupported and wrong. (Opp. ¶ 78.) Before filing these chapter 11 cases, the Petitioning Creditors themselves had commenced a lawsuit in which to litigate their claims against TVA. (MOL ¶ 70.) That case was pending before the Southern District of New York but was abruptly halted by these Involuntary Petitions. (MOL ¶ 8.) Dismissal for cause is warranted.

---

[21] The Petitioning Creditors fail to overcome the Alleged Debtors' showing that the private and public interest factors weigh in favor of dismissal. *See* MOL ¶¶ 56, 65 (citing *In re Xacur* and *Multicanal*); *see also RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 557–58 (S.D.N.Y. 2013) (granting *forum non conveniens* dismissal in part because "a judgment from this Court may not be enforceable in Russia").

13

**IV.    The Petitioning Creditors Lack Standing under Section 303(b)(1).**

36.    Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") with the aim to minimize abuse of the bankruptcy process.  Particularly relevant for this case, the phrase "as to liability or amount" was added following "bona fide dispute" in Section 303(b)(1) of the Bankruptcy Code to make any bona fide dispute solely with respect to the "amount" of a claim sufficient to disqualify the entire claim for involuntary filing purposes.[22]  (*See* MOL ¶ 71.)  In doing so, Congress deliberately raised the bar for involuntary bankruptcies to deter opportunistic filings by creditors holding disputed claims.[23]

37.    The Petitioning Creditors concede that they directed the Indenture Trustee to sue the Alleged Debtors in the New York State Supreme Court and sought damages that included the Redemption Premium, (Opp. ¶ 22 & n.8), which is a matter of bona fide dispute in the litigation.  They also admit that Section 303(b)(1) requires an involuntary case to be commenced by petitioning creditors whose claims are "not contingent as to liability or the subject of a bona fide dispute as to liability or amount."  (11 U.S.C. § 303(b)(i); *see* Opp. ¶ 73.)  Confronted with these undisputed facts and points of law, the Petitioning Creditors seek to avoid dismissal by claiming that they "are not seeking to collect the Redemption [P]remium in these Chapter 11 Cases." (Opp. ¶ 74 n.35.)  The Petitioning Creditors cannot separate the disputed Redemption Premium from the remainder of their claims under the Notes as an end-run to the requirements of Section 303(b)(1).

38.    Under Section 303(b)(1), any dispute regarding the amount that "***arises from the same transaction*** . . . should render the claim subject to a *bona fide* dispute." *In re Euro-American*

---

[22] Pub. L. No. 109–8, §§ 1234(a)(1)(A), 119 Stat. 23 (2005).

[23] BAPCPA set a "deliberately high bar" by disqualifying claims subject to even *de minimis* dispute.  *See In re Navient Sol. LLC*, No. 21-CV-2897 (JGK), 2022 WL 863409, at *7 (S.D.N.Y. Mar. 23, 2022); *see In re Honolulu Affordable Hous. Partners, LLC*, No. 15-00146, 2015 WL 2203473, at *6 (Bankr. D. Haw. May 7, 2015) ("[Argument that BAPCPA] eviscerate[s] involuntary bankruptcy . . . may be true but it is irrelevant. . . . [T]he court's job is to apply the statute as written.").

*Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007) (emphasis added); *see also In re Koffee Kup Bakery, Inc.*, No. 21-10168, 2022 WL 141516, at *7 (Bankr. D. Vt. Jan. 14, 2022) (holding that the question of whether a portion of a claim is the subject of a bona fide dispute turns on whether the disputed and undisputed portions of each claim arise from separate transactions). Here, the Petitioning Creditors do not deny that the disputed and undisputed portions of their claims relating to the Notes arise from the same transaction. (Opp. ¶ 73.) The disputed damages cannot be carved out to rescue these proceedings from dismissal.[24]

39.     *Koffee Kup* is instructive. There, a petitioning creditor took the position that only the amount of an undisputed unpaid invoice was the basis for her involuntary petition, and purported to exclude a disputed claim for the wrongful termination under the same contract. 2022 WL 141516, at *7. The *Koffee Kup* court refused to recognize this artificial exclusion, and held that the petitioning creditor failed to "meet the eligibility criteria of § 303(b)(1)." *Id*.

40.     That same reasoning applies here. Allowing the Petitioning Creditors to exclude the disputed Redemption Premium to manufacture an undisputed claim would defeat the purpose of BAPCPA: limiting access to involuntary bankruptcy petitions to those creditors with undisputed claims as to both liability and amount, and to protect debtors and the bankruptcy courts from being flooded with opportunistic filings.

## CONCLUSION

41.     The Petitioning Creditors' Involuntary Petitions should be dismissed.

---

[24] *In re J.B. Lovell Corp.*, cited by the Petitioning Creditors, (Opp. ¶ 74), was decided before the above-mentioned 2005 BAPCPA amendment. 88 B.R. 459 (Bankr. N.D. Ga. 1988). Although lower courts are split, all the circuit courts (First, Fifth and Ninth Circuits) that have addressed the issue have found that a bona fide dispute as to any amount of a claim results in a creditor's lack of standing under Section 303(b)(1). *See In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 91–92 (S.D.N.Y. 2020) (citations omitted). Every judge in this district that has addressed this issue agrees. (*See* MOL ¶ 71 n.23.).

New York, New York
Dated: July 14, 2023

*/s/ Jay Cohen*
Jay Cohen
Kelley A. Cornish
Elizabeth R. McColm
William A. Clareman
Sean A. Mitchell

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
jcohen@paulweiss.com
kcornish@paulweiss.com
emccolm@paulweiss.com
wclareman@paulweiss.com
smitchell@paulweiss.com

*Counsel to the Alleged Debtors*