

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10385-lgb

4

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    TV AZTECA, S.A.B. DE C.V.,

9

10            Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY   10004

15

16                    August 15, 2023

17                    10:00 AM

18

19

20

21   B E F O R E :

22   HON LISA G. BECKERMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   PAUL WEISS RIFKIND WHARTON GARRISON

4        Attorneys for the Debtor

5        1285 Avenue of the Americas

6        New York, NY 10019

7

8   BY:  WILLIAM CLAREMAN

9        JAY COHEN

10       KELLEY CORNISH

11       SEAN MITCHELL

12       ELIZABETH MCCOLM

13

14   AKIN GUMP STRAUSS HAUER FELD

15       Attorneys for Petitioning Creditors

16       2300 N Field Street

17       Dallas, TX 75201

18

19   BY:  ABID QURESHI

20       MICHAEL STAMER

21       SARAH SCHULTZ

22

23

24

25

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Attorneys for the U.S. Trustee

3        Alexander Hamilton Custom House

4        One Bowling Green, Room 534

5        New York, NY 10004

6

7   BY:  DANIEL RUDEWICZ

8

9   SHEPPARD MULLIN RICHTER HAMPTON LLP

10        Attorneys for Diamond Films Netherlands Cooperatief USA

11        30 Rockefeller Plaza, Floor 39

12        New York, NY 10019

13

14   BY:  KATHERINE BOY SKIPSEY

15        MICHAEL DRISCOLL

16

17   RIKER DANZIG SCHERER HYLAND PERRETTI LLP

18        Attorneys for the Bank of New York Mellon, as Indenture

19        Trustee

20        Headquarters Plaza

21        One Speedwell Avenue

22        Morristown, NJ 07962

23

24   BY:  CURTIS PLAZA

25

Page 5

1              P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge

3     Beckerman.  I'm going to go ahead and call the case.  And

4     when I do, I ask the attorneys to put your appearances on

5     the record and also to please identify yourself when you're

6     speaking for the record.  Case Number 23-10385, T.V. Azteca,

7     S.A.B, de C.D.  May I have appearances of counsel, please.

8              MR. CLAREMAN:  Good morning, Your Honor.  Billy

9     Clareman from Paul Weiss on behalf of the alleged debtors.

10    I'm also joined in the virtual courtroom by several of my

11    partners: Jay Cohen, Kelley Cornish, Sean Mitchell, and

12    Elizabeth McColm.

13             THE COURT:  Thank you.

14             MR. QURESHI:  Good morning, Your Honor, Abid

15    Qureshi, Akin Gump Strauss Hauer and Feld on behalf of the

16    petitioning creditors and also co-counsel to Bank of New

17    York as indentured trustee.  And with me are my partners,

18    Michael Stamer and Sarah Schultz.

19             THE COURT:  Thank you, Mr. Qureshi.

20             MR. RUDEWICZ:  Good morning, Your Honor, Daniel

21    Rudewicz on behalf of the United States Trustee.

22             THE COURT:  Okay.

23             MR. PLAZA:  Good -- go ahead.

24             MS. SKIPSEY:  Katherine Boy Skipsey, joined by

25    Michael Driscoll, on behalf of Diamond Films.

Page 6

1          THE COURT:  Thank you.

2          MR. PLAZA:  And good morning, Your Honor, Curtis

3   Plaza from Riker Danzig on behalf of the Bank of New York as

4   indentured trustee.

5          THE COURT:  Thank you, Mr. Plaza.  All right.  Any

6   other appearances?

7          Okay.  So today we have a status conference, I

8   think, to talk about our upcoming multiday hearing beginning

9   on the 28th of August.  I had a few things for you all and

10  then I'm sure you have a number of things for me as well.

11         So on my notes, I have that I'm expecting.  I

12  think you all know what my rules are, that I take direct

13  testimony in declarations, which been submitted, of course,

14  already by --not counting the US lawyers -- four witnesses,

15  two from each side it looked like to me.  So the first thing

16  I wanted to ask is, was I missing anybody that I should be

17  expecting that will be showing up as a witness?  And if, you

18  know, what else I was looking for from each side.  So I

19  guess I'll have to ask the movant that question first.

20         MR. CLAREMAN:  Yes, Your Honor.  And actually, I

21  think I can report more broadly on behalf of both the

22  alleged debtors and the petitioning creditors because this

23  has been a subject about which we've had a number of

24  discussions.  Recognizing that your individual practices

25  call for direct examinations by written declaration or

Page 7

1   proffer, we've submitted a number of declarations as you've

2   just noted.

3          We have reached an agreement with the petitioning

4   creditors to submit two further declarations.  There will be

5   no additional witnesses at the hearing.  However, we have

6   agreed with the petitioning creditors that with respect to

7   the experts -- as you know, both sides have submitted expert

8   declarations from experts on Mexican insolvency law -- the

9   petitioning creditors would serve an additional expert

10  report, declaration, which was sent to us yesterday.  That

11  declaration is not supposed to offer any new opinions but

12  will merely respond to matters that were opined on in

13  Professor Mejan's last declaration.

14         We have further agreed that the alleged debtor's

15  expert, Professor Mejan will be permitted to submit one

16  further responsive declaration subject to the same rules.

17  That will be served by noon on the 21st, so this coming

18  Monday.

19         We've also agreed that the experts will be subject

20  to depositions in New York.  That's taking place next week.

21  But there will be no further direct testimony from any

22  witness.  There will not be any live direct or written

23  direct.  The parties will rest on the declarations.

24         I mentioned that the last in time declaration was

25  served on us yesterday.  That hasn't been filed with the

Page 8

1    Court.  We are happy to agree to file these declarations as

2    they come in or provide them simultaneously with the

3    exhibits that we're planning to prepare and submit to the

4    Court on August 23rd.  We're happy to take direction from

5    Your Honor in terms of what you would prefer.  If you'd

6    rather see them in real time as they come in, we're happy to

7    accommodate that in any manner.  But that is the agreement

8    of the parties with respect to direct testimony for purposes

9    of the hearing, if that's acceptable to you.

10            THE COURT:  And Mr. Qureshi, I just wanted to give

11   you an opportunity to respond if there's anything additional

12   you wanted to add or clarify.

13            MR. QURESHI:  No, nothing to add, Your Honor.  Mr.

14   Clareman recited correctly the agreement that we reached.

15   So we, again, we're, we're happy to file the report on the

16   docket now, the one that we served yesterday, or wait until

17   exhibits are exchanged, whatever Your Honor prefers.

18            THE COURT:  Okay.  Well they're certainly going to

19   have to be filed on the docket.  The question, I guess, is

20   just now or later in terms of the declaration.  So I'll just

21   say that.

22            I'm going to guess maybe we should talk about the

23   rest of what you're intending to do just so we have a, I

24   have a complete picture before I tell you what I would like

25   to do.  So I guess that takes me to, I guess, my next topic,

Page 9

1    that was witnesses.  I guess my next topic was going to be

2    exhibits.  I didn't know, you know, I know the parties have

3    been in discussion about the exhibits.  I know they've been

4    conferring.  I definitely heard that through my law clerk.

5    But I just wondered where things stood.  If there were any,

6    I guess, exhibits where there's going to be issues about

7    admissibility, if there is going to be any motions in

8    limine, what I should be expecting?

9            MR. CLAREMAN:  Sure.  So I'm happy to take that

10   one.  So the parties have exchanged exhibit lists.  We

11   exchanged them yesterday.  We intend to work together to

12   ultimately submit a set of joint proposed exhibits to the

13   Court by August 23rd, which is five days before the hearing.

14   Again, we were looking to your individual practices for that

15   deadline with one exception, which is demonstratives, which

16   I will come back to.

17           I don't anticipate at this time that there will be

18   disputes or motions in limine with respect to the exhibits.

19   We did just exchange exhibits last night.

20           THE COURT:  I understand.

21           MR. CLAREMAN:  So I suppose that could change, but

22   at this time, I'm not expecting there to be any motion

23   practice around that.

24           THE COURT:  Okay.  Well, from my experience, it's

25   not -- most people tend to agree on most things, but

1    sometimes there's one or two things that don't end up being

2    agreed to.  So it seems like it's too early to know that.

3    That's all right.  And that's fine.  I actually generally

4    like to actually look through my exhibit book before my

5    trial.  So I tend to do it myself like, right, like in the,

6    maybe the end of the week before.  So your timing is okay

7    from my perspective for the exhibits because I, that's when

8    I would probably sit down at the end of that week and look

9    through them just to familiarize myself.  And, obviously, if

10   there are any issues about admissibility, they need to be

11   flagged for me by then so I know what to expect.

12            And if there's anything that people feel they need

13   to brief about that, then they need to have done that too so

14   that I have it all in front of me when I sit down and just

15   start looking at it.  But that's fine.  I normally wouldn't

16   start till about that time anyway.  So that's totally fine

17   timing-wise for me.

18            Okay, so next question is I know obviously the

19   witnesses that we've been speaking about are going to be

20   here in person and you all will be here in person, which I,

21   I'm happy to hear.  My question for you, which I just wanted

22   to make sure I was clear and everybody understands that

23   they're going to have to be here in person and that you're

24   not expecting anybody to be on by Zoom.  And when I say

25   anyone, I don't just mean witnesses.  I just mean anyone

Page 11

1    because if there's anyone that does intend to be on by Zoom

2    or we need to have on Zoom, I have to have my courtroom set

3    up for hybrid hearings, which is not a problem.  I've done a

4    number of them.  Even if all the witnesses are here, I've

5    still sometimes had one or two counsel or somebody else who

6    couldn't be here.  And given that we're talking about people

7    who many of which reside in Mexico, I thought I would ask

8    about this so that we would know what we needed to do with

9    my courtroom in advance.  Our IT department would probably

10   appreciate that from me.  So that's why I'm asking about

11   that.

12             MR. CLAREMAN:  Yeah.  And I appreciate that, Your

13   Honor.  We certainly did intend for all of the actual

14   witnesses to be present in the courtroom.  We had not

15   previously discussed a hybrid setup, at least on our end.  I

16   think that's something that we can discuss and we'll get

17   back to your chambers promptly if it's something that we

18   anticipate.  It's not, it's not something that we had

19   expected to do, but since Your Honor has raised it, I would

20   like a chance to discuss it.

21             THE COURT:  Only that I don't want somebody to

22   feel that their client can't, or some counsel who's lesser,

23   less, sorry, less than handling all the issues in court and

24   doesn't need to be in court perhaps.  Sometimes there are

25   reasons that people need to do that, so I worry if we can be

Page 12

1   accommodating.  So I just needed to know so that how we set

2   up our courtroom is a little different when that happens.

3   That's why.  So that's my question.  All right, you can get

4   back to me.  I would actually appreciate it if you could get

5   back to us by no later than Monday about that.  Certainly,

6   end of the week would be great, but certainly no later than

7   a week in advance because we do need to give our IT

8   department a bit of, you know, a bit of advance notice on

9   that one.

10          MR. CLAREMAN:  Yes, no problem.

11          THE COURT:  Okay.  No worries.  Again, my bench is

12   set up for that anyway.  I mean, because I, as I said, I've

13   had them so it's not, it's just a function of what they do

14   with some other equipment in my courtroom.

15          Okay, next thing.  I know you all have asked for

16   certain accommodations that we are granting here and I just

17   wanted to make sure that we went over them with the --

18   because some of them involve, of course, access for you all

19   for lawyers and clients and witnesses here in court.  So we

20   have reserved two breakout rooms for both hearing dates.

21   One will be on our fifth floor and one is on the floor we're

22   on, on the second floor.  And you can access your break

23   rooms on both hearing dates between 8:30 and 6.  You can

24   bring in your own printer to the break, you know, the

25   breakout room if you wish.  You can bring food and drink,

1    but you have to clean up and leave the rooms in the

2    condition that they found them.  I guess so that I don't

3    hear from the guy who I see every night when he comes to

4    clean our chambers about how messed up things were from the

5    trial.  On -- if you all want, you can access the breakout

6    rooms on the 25th, which is the Friday before, to set up or

7    drop off equipment.  Our automation team can also be

8    available on the 25th in case each of the parties would like

9    to test their equipment either there or in the courtroom.

10   And you can just call my law clerk, Griselda, to reach out

11   to her, Cabrera, about that and she can coordinate with our

12   IT staff.

13          Each of the attorneys will be permitted to bring

14   in their phone and laptop.  You have to give us, by Monday

15   the 21st, an itemized list of all the equipment being

16   brought into the courtroom, any phones and computers that

17   are being brought in by non-attorneys so we know what to

18   expect.  That's because we have to deal with the court

19   security in addition to the IT department about those

20   things, just so they may know that people are allowed to

21   bring things in.  I'm generally lenient about that.  As long

22   as we give people notice, no problem.  I just noticed --

23   note that if, as you all know, all your ringers will have to

24   be off during trial.  So I'm just warning you all.

25          Okay, I guess in connection with that, that's what

Page 14

1    our arrangements have been for technology.  And in terms of

2    your breakout rooms, were there any questions you had about

3    that?

4           MR. QURESHI:  Yeah, so, Your Honor, again, Abid

5    Qureshi on behalf of the petitioning creditors.  Just with

6    respect to -- well, maybe I can step back.  So the parties

7    have had a very productive meet-and-confer process in terms

8    of at least how we thought things would proceed subject, of

9    course, to Your Honor's preferences.

10          I think it is our expectation there will probably

11   just be two live witnesses, the two competing experts on

12   Mexican law.  We don't definitively know that yet because

13   depositions are coming up, but that appears to be likely.

14   We have also worked and are continuing to work towards

15   submitting to the Court joint stipulated facts so that Your

16   Honor will be clear about what, what is and what is not in

17   dispute.

18          I do have one question with respect to logistics.

19   So certainly on behalf of the petition creditors, it is our

20   intention at closing to, to prepare a number of slides.  And

21   we're perfectly happy just handing those up to Your Honor.

22   We don't need the courtroom technology for that.  If Your

23   Honor has a preference, we're certainly happy to put things

24   up on a screen as well, whatever the Court's preference is.

25   And, likewise, for witnesses, there may be a few

Page 15

1    demonstrative exhibits.  Same thing, happy to do it old

2    school and just hand up copies or project onto a screen,

3    whatever the Court's preference is.

4            THE COURT:  Okay.  Well, Mr. Qureshi, we

5    definitely -- I've seen it done each way in front of me.

6    And as long as I actually have them, I'm fine with them

7    however you would like to do it.  So that's fine.  We

8    obviously do need to let our IT team know what the party is

9    intending to do because that does matter also.  I mean it's

10   less, probably less of an issue if the courtroom has already

11   been set up for hybrid, because we'll have a screen.  If it

12   hasn't, we still need to have a screen.  And I believe you

13   all will have to bring in your own laptops to do that.

14   That's my recollection about that.  I'm not sure.  If I'm

15   saying that wrong, my law clerk will probably correct me.

16   So I think I'm open to either way.  I do sometimes find that

17   that's helpful for closing argument myself just in terms of

18   actually seeing slides.  In some way, I find those to be

19   useful, but I -- probably you all know this about me anyway,

20   but I read everything.  So if I -- if it's been submitted to

21   me already, I've read it, and if not, I'll read it when you

22   hand it to me.  So that's, that's, that's fine.  I'll leave

23   that to you all, but you'll need to let us know.  Again, I

24   think that's probably another thing we're going to have to

25   tell our tech people about, you know, by next Monday so that

Page 16

1    they have time to know what's happening.  And if you all are

2    planning on using that for closing argument, you might want

3    to just test it in the courtroom, which is fine too.  Again,

4    on that 25th, if somebody wants to come by and just run,

5    don't necessarily have to have your deck just to see if the

6    computer works with everything that's fine too.  Just let us

7    know.  We're, you know, no problem at all.

8              I should also note while we're on this subject,

9    when you were saying you're only expecting to have two

10   witnesses in person, what does that mean?  Does that mean no

11   one will be wanting to cross-examine the other two

12   declarants and you all have stipulated to facts relating to

13   them or is it something else I'm missing?

14             MR. QURESHI:  So, Your Honor, I'm happy to answer

15   that.  I think the expectation is that everything in the

16   other declarations will be stipulated to.  And that the, the

17   two witnesses, the two experts that will appear live, will

18   be subject to cross-examination.  Again, we're, we're not

19   quite there yet with respect to one fact witness from the

20   alleged debtors whose deposition is being taken next week.

21   But if, if it turns out that there is any remaining disputed

22   issue after that deposition, I expect any need for live

23   testimony would be extremely limited and hopefully we can

24   resolve it by using a deposition transcript.

25             THE COURT:  Okay.  So I guess I'll just ask this

Page 17

1    question because I guess that's what comes to mind first for

2    me.  So there won't be -- what you're telling me is that you

3    think, again, not holding you to it, but you think you will

4    have worked out any disputes that relate to, I guess, the

5    non -- the arguments that don't involve issues of Mexican

6    law.  So no one will have any disputes about, for example,

7    what's going on or the other litigation that's been going on

8    with the parties.  Unless it's in Mexico or involves Mexican

9    law, the facts that are in dispute in other litigation, for

10   example, that isn't taking place in Mexico.  All those will

11   be stipulated to.

12            MR. QURESHI:  So, Your Honor -- and I'm certainly

13   not speaking on behalf of Diamond Films and their

14   litigation, I will defer to them from that.  But yes, it is

15   our expectation that with respect to the petitioning

16   creditors and the alleged debtors, we will be able to

17   stipulate by and large to, to I hope all of the facts.

18   Again, we have to iron that out.  We've exchanged draft

19   stipulations of facts.  So we're still working through it.

20   But my hope is that is, that is where we will end up to.

21            To be clear with respect to the litigation that is

22   pending in Mexico, there most certainly is a dispute between

23   the two experts on Mexican law as to the import of that, of

24   course, and that will be the subject of testimony before

25   Your Honor.  But otherwise, we're, we're working towards

Page 18

1    having everything stipulated and we'll, we'll see if we get

2    there.

3              THE COURT:  Okay.  All right.  That's helpful to

4    know, fine.  I guess since you brought up Diamond Films, I

5    might ask their counsel for a second.  I know you filed a

6    reservation of rights, but obviously, we're now heading into

7    hearing.  Are you, what are you intending to, you know, to

8    present at hearing?  Just argument with respect to the

9    motion?

10             MS. SKIPSEY:  Your Honor, we're still determining

11   whether we're going to take a position in the motion.  We

12   reached a deal with the alleged debtors on discovery, access

13   to their discovery yesterday.  So we're evaluating the

14   evidence and in the coming days, we'll let the parties know

15   if we're going to participate in the hearing and to what

16   extent and what position we're going to take.

17             THE COURT:  Okay.  Well, some things though, I

18   think that would be a problem with respect to.  So we're

19   getting to be -- there's depositions happening next week and

20   I think we pretty much know like that we have four witnesses

21   that are coming to potentially testify, maybe only two of

22   which will be testifying as people work everything out.  But

23   we sort of know we're going to have between four and two

24   witnesses and who they are.

25             So I think if you were planning on calling any

Page 19

```
 1    witnesses, that would have to be made very clear like now,

 2    so people would have an opportunity to actually depose the

 3    witnesses and you'd have to submit declarations.  Even my

 4    rules require that, you know, obviously, no later than a

 5    specific point.  Obviously, we're not there.  But clearly,

 6    if you just wish to take a position on the record and

 7    participate in argument, that's one thing.  But if you're

 8    planning on doing something else, I think you're going to

 9    need to tell people like now pretty much.

10            MS. SKIPSEY:  Yes, Your Honor.  We don't foresee

11    taking full participation in the trial or bringing up

12    witnesses.  But we'll let you know if that changes.  For

13    now, it will be just state our position in the record.

14            THE COURT:  Okay.  All right.  That's fine.  Okay.

15    Well that at least answers my question about that.  So I

16    guess I was assuming that the process for the hearing would

17    go that we'll have if anybody wants to present certainly

18    opening argument, then our witnesses -- it sounds like we

19    might just have two -- and then closing argument.  And I,

20    obviously, it sounds like we might have that with involving

21    some technology, demonstratives, et cetera, which is fine.

22            I should say for the parties, it sounds like that

23    would certainly be doable, especially if it's two witnesses,

24    in two days.  No problem.  With four, still, hopefully.  If

25    -- just for the record, I have not put anything else on my
```

Page 20

1   calendar on Wednesday.  It is wide open in case.  I've had

2   too many experiences with this where I then needed more

3   time.  So I prefer to sometimes allow myself too much time.

4   But that's for the record.  You all know that.  I do have a

5   very full calendar on Thursday, but I have zero on Wednesday

6   on purpose, and won't be scheduling.

7          Okay.  I'm just thinking.  Give me one second to

8   look at my notes and figure out what else I wanted to ask

9   you here.  Okay, so we covered exhibits.  We covered

10  witnesses.  We covered technology.  You're going to get back

11  to me on hybrid.  Oh, I don't think I got back to you on

12  your declarations.  So, yeah, I would probably like to read

13  them when they're, when they're, you know, delivered to the

14  other party.  If you want to wait and file them at the time

15  you file the, you know, file them when you hand me exhibits,

16  you know, when you deliver exhibits, that's fine.  But you

17  are going to actually have to file the declarations on the

18  record.  Obviously, not the exhibits but the declaration.

19  So I just leave it to you all as to what you want to do

20  about that.  I'm not -- I would like them filed once they're

21  completed, both of them for sure, but I don't feel that you

22  have to file the one today if that's not what you would

23  prefer to do.  It could all be done as you all wish, but I

24  would like to see it.  So I would appreciate that.  And

25  obviously, I'll see the other one when you deliver that

Page 21

1    along with the exhibits, I'm guessing, based on what you

2    said.

3              MR. CLAREMAN: Yes, of course, Your Honor.

4              THE COURT:  Okay.  All right.  I guess I'll ask,

5    Did you have any other questions for me?

6              MR. CLAREMAN:  Yes.  Billy Clareman, again, on

7    behalf of the alleged debtors.  On the subject of openings

8    and closings, there was, there were a few items that we had

9    discussed with the petitioning creditors.

10             The first is we had agreed that subject to Your

11   Honor's views, that we would be limited to 15 minutes per

12   side for openings as an example.

13             THE COURT:  That's fine.

14             MR. CLAREMAN:  And the other agreement that we had

15   reached was, again, subject to Your Honor's views, that we,

16   given the potential here that there would be, you know, two

17   15-minute openings followed by potentially only two

18   witnesses with no direct examinations, you know, hope

19   springs eternal and we may actually conclude early on day

20   one.  And if that happens, we would propose rather than

21   rolling directly into closing, to reconvene the next day.

22             THE COURT:  Fine, you have my entire time reserved

23   for both days plus my entire time open for the next day.  So

24   whatever you all want to do, I'm completely flexible.  So

25   that's fine.  If you want to wait to have the next day when

1   you got there and have closing argument the next day, that's

2   fine.  If you tell me, no, you'd rather do it Wednesday,

3   that's also okay.  You all can have my, you know, unlimited

4   time calendar there.

5           MR. CLAREMAN:  Okay.  We certainly appreciate

6   that, Your Honor, and we'll discuss that further in case

7   taking advantage of the third day is something that's

8   attractive or even viable to folks.  We had discussed a sort

9   of soft limit of an hour for closing arguments each side.

10  Obviously, if the Court has questions that take that beyond

11  an hour, then, of course, it would, you know, that can

12  happen and we all recognize that.  But in terms of what we

13  would be planning for, that was what we had discussed

14  yesterday with the petitioning creditors if that's ok with

15  the Court.

16          THE COURT:  It is.  And you reminded me of

17  something actually while you were saying that.  So I'm just

18  going to jump in.  It doesn't have to do with what you were

19  talking about, but it does have to do with the witnesses.

20          So I don't think I mentioned usually when I ask my

21  questions.  So I don't think any of you have had trials in

22  front of me before.  So I usually ask my questions after

23  cross-examination by the opposing parties, but before

24  redirect, so that if I raise issues in my questions that you

25  need to address with the witness, you have an opportunity to

```
 1   do that.  I try not to interrupt the witness during your

 2   examinations or during the other party's cross.  I just --

 3   but I will probably, given the nature of at least the two

 4   witnesses we're talking about, I'm sure I will have some

 5   questions.  I'm sure you all know this too, but I'll just

 6   say, of course, we do our own preparation here.  And so I'll

 7   certainly, we have certainly already looked at some issues

 8   involving, you know, Mexican law, just, and you all know, I

 9   practiced.  I had some experience with concurso, so it's not

10   completely unfamiliar to me.  Obviously neither is the

11   UNCITRAL Model Law or -- obviously, the Mexican version is

12   interesting.  So we -- I certainly -- you know, we will, I

13   will certainly be prepared to have some questions which

14   wouldn't probably surprise you.  So that's when I will ask

15   them, just so you know.

16           MR. CLAREMAN:  Excellent.  Thank you, Your Honor.

17           THE COURT:  And the witnesses won't be surprised,

18   which I think is better.

19           MR. CLAREMAN:  Yes.

20           THE COURT:  Okay.  And then also, before I let you

21   go back, sorry, to what you're asking me, I have one other

22   thing that came up with respect to the witnesses that I

23   didn't ask, which is all of the witnesses, the four

24   witnesses that submitted declarations, are -- obviously,

25   three of them are Mexican attorneys.  Obviously they all
```

Page 24

1    reside in Mexico.  Is there going to be any need for an

2    interpreter?  My guess was that probably based on that the

3    parties to the experts do speak English, but I don't know.

4    And I have had, in some of my other cases, where I've had

5    expert legal testimony, sometimes people still have an issue

6    with that.  So I just wanted to ask in advance about that.

7    We don't, our court doesn't generally provide for them just

8    so you know, so you'd have to have your own if that's

9    something that's going to be required.  There's actually a

10   list that the district court keeps of approved interpreters.

11   It doesn't necessarily have to be that person, but there are

12   some guidelines that we're supposed to follow in our court

13   relating to that.  So I thought I would ask, sorry, while I

14   was thinking about that.  Again, Mr. Clareman, sorry for

15   interrupting you.

16          MR. CLAREMAN:  No problem at all, Your Honor.  We

17   do not anticipate that the experts would require an

18   interpreter.  If Mr. Rodriguez, T.V. Azteca's CEO, who

19   submitted a declaration, if he is required to testify live,

20   we would expect to have an interpreter.  We are, we expect

21   to have an interpreter present during his deposition and it

22   will be conducted through an interpreter.  And so we will,

23   of course, consult the, you know, relevant requirements and

24   the district court's list and make the necessary

25   arrangements for an interpreter if it does turn out that we

Page 25

1    will need live testimony from Mr. Rodriguez in the

2    courtroom.

3            THE COURT:  Okay.  I think you'll need to, after

4    the depositions, let us know what you're planning to do with

5    him and whether you're going to be also bringing an

6    interpreter.  There's obviously some -- part of the

7    guidelines actually have to do with, which probably won't

8    surprise you, with the nature of, usually the need to have

9    sometimes more than one interpreter, especially when

10   someone's going to, depending on how long the testimony is

11   going to be, and how that works for purposes of the

12   guidelines for the district report.  So you should probably

13   take a look at that, but you'll need to let us know in

14   advance just so I can let both our IT staff because they

15   would, they usually want to know if we're going to have

16   other parties, and let security, of course, know if we're

17   going to have someone coming in because they'll need to know

18   that too.  So I just wanted to know.  I'm sure I'll get

19   asked that question by somebody.  So I figured I'd ask it.

20           Okay, sorry, Mr. Clareman.  Now I'm going to let

21   you continue asking questions to me, my apologies.

22           MR. CLAREMAN:  No, no problem at all, Your Honor.

23   I'm just looking at my list.  I believe I only have two

24   other items which are very logistical.  So one is there are

25   exhibits which have been filed under seal and which have

Page 26

1    been marked as confidential or highly confidential.  Many of

2    those concern current, you know, commercial arrangements

3    with third parties.  And we intend to continue to protect

4    the confidentiality of the commercial terms of those

5    agreements.  We've also, in connection with producing them,

6    provided notice to third parties and received requests from

7    third parties to maintain confidentiality.  To the extent --

8    so we've had some discussions with the petitioning creditors

9    about how we might approach addressing in open court

10   exhibits which are filed under seal.  We certainly would

11   welcome any feedback from Your Honor on how to do that.  We

12   have some ideas, but if Your Honor --

13              THE COURT:  Sure.  We have done these in a number

14   of our trials here before.  So I will just say the way that

15   I have typically seen this done, but I'm obviously open to

16   other things, but this has worked with our ECRO and the

17   court system is we have to -- when we're getting to a

18   discussion about something that's a confidential document,

19   we have to indicate on the record that it is a confidential

20   document.  That has to be marked in the record for that.

21   That obviously won't be in the transcript when the

22   transcript is filed on the record.  It will obviously be

23   available for parties that are there.  Only parties who are

24   in the courtroom, who are subject to your protective order,

25   would be able to stay in the courtroom when that's being

1    discussed.  And that would also be true for people online.

2    So we have had the fun of kicking people offline and putting

3    them back online, kicking them offline, putting them back

4    online.  So it does happen and it is doable.  Same thing

5    with parties in the courtroom.  I've had people who came to

6    observe trials because they had interest in it, but they

7    weren't parties to the protective orders.  We've had to,

8    we've had to announce that we're getting into confidential

9    information and usually the counsel would let me know that

10   they're getting there and then we would, I would make an

11   announcement.  We would make people have to leave.  I would

12   have a list of people who were subject to the, you know, who

13   weren't problematic in the courtroom.  We would make sure

14   that the only people that were still in the courtroom were

15   the ones that were subject to the protective order and

16   covered by it and then we would get into the discussion.  So

17   I think that's how that would work.  I've seen it work for

18   us and I know that works for the court transcript purposes.

19   And then we would go off, notify when we're going back off

20   the confidential part on the record again, allow people to

21   come back in.  If someone's on Zoom, allow them to come back

22   in, and then proceed from there.  It's disruptive, but it

23   does work and it does work for purposes of the transcript.

24   I've had a few, a few trials where this has been an issue

25   actually.

Page 28

```
 1              MR. CLAREMAN:  Okay.  Well that, I think, from our
 2      perspective, is doable.  Another -- certainly, and if that's
 3      the Court's preference, then that's how we will proceed.
 4      One potential approach that we had discussed with the
 5      petitioning creditors yesterday would be to the extent there
 6      are, for example, stipulated facts which concern
 7      confidential information, we can also potentially, at least
 8      at times, avoid the disruption by simply referring to the
 9      confidential filed under seal version of stipulated facts or
10      evidence without actually describing the terms out loud in
11      court.  So there may be some sort of workarounds that the
12      parties can develop that can avoid the requirement that the
13      court will be cleared if that becomes an issue.
14              THE COURT:  That's fine.  I mean some of it is
15      going to be what you're doing with the witnesses, how these
16      are coming up, whether they're coming up in argument,
17      whether they're coming up, you know, when you're dealing
18      with cross-examination whether it's, for example, part of a
19      particular document, maybe not even always the whole
20      document that's the issue.  So without knowing what you're,
21      what's going to be left once you figure out what witnesses
22      are actually going to be testifying and what documents
23      you're stipulating to or not, and which ones contain that
24      information, it will be an issue.  Obviously, I have my
25      sets, so that's fine.  And, of course, myself and my law
```

Page 29

1    clerks have looked at the under seal documents.  But that's

2    it.  And we keep them in physical form.  We don't, for the

3    record, we don't scan them into our system.  We don't put

4    them anywhere because we are supposed to destroy them after

5    my rulings.  And we do when I finish.  So that's what

6    happens.  And, ironically, I recently had something come up

7    where I had ruled on something and then something -- not

8    exactly the same issue, but something else came up where it

9    would have been helpful for me to have a document that I

10   have actually had and was the subject of some testimony in

11   court and under confidentiality.  And I had destroyed it and

12   our clerk's office had also destroyed it because it had been

13   more than six months.  And so we had to actually ask for it

14   again, which was pretty funny.  But that's better that we do

15   that.  And you all know we actually comply with our rules

16   than otherwise.

17           MR. CLAREMAN:  I appreciate that.  Okay.  I think

18   the last two items on my list are one we actually had spoken

19   about.  We've spoken a few times about the party's efforts

20   to arrive at some set of joint stipulated facts.  We

21   currently have depositions that are scheduled to run through

22   August 24th, which is the Thursday before the hearing.  And

23   so we had discussed submitting those to the Court on Friday,

24   August 25th.  That's obviously very close to the hearing at

25   that time.

Page 30

1           THE COURT:  At what time.

2           MR. CLAREMAN:  We can do it as early as Your Honor

3     would like to see it.  So I think --

4           THE COURT:  So, I am going to be in my -- I don't

5     normally, I guess I don't know if I should say this.  Maybe

6     I shouldn't.  But I normally am -- I'm normally in my

7     chambers many days and Fridays we don't hold hearings.  So

8     sometimes I am not in my chambers and I am at home.  But

9     when I have trial, I usually am in my chambers.  So it

10    probably would be fine if we could get it first thing in the

11    morning, like by 10.  It probably would be not so fine if

12    you gave it to me at five o'clock in the afternoon.

13          MR. CLAREMAN:  Okay.  I am sure that we can agree

14    on 10 a.m. in that case.

15          THE COURT:  All right.

16          MR. QURESHI:  Indeed we can.

17          MR. CLAREMAN:  Okay, the last  housekeeping item

18    is -- and we advised the petitioning creditors counsel

19    yesterday that we intended to do this, but I'm going to be

20    filing a corrected declaration.  It's the Clareman reply

21    declaration.  One of the documents that was attached to that

22    declaration is a loan document.  It was not the operative

23    version of the document, the currently operative version of

24    the document.  And so we are going to file a corrected

25    declaration that attaches the operative version and a

Page 31

```
 1    translation of the operative version, which was also an

 2    exhibit to my declaration.

 3              THE COURT:  Okay.  Thank you.  All right.  Was

 4    there anything else, Mr. Clareman, you wanted to raise with

 5    me?  If not, I'll turn it over to Mr. Qureshi.

 6              MR. CLAREMAN:  That exhausts my list.  Thank you

 7    for the time, Your Honor.

 8              THE COURT:  Okay.

 9              MR. QURESHI:  Your Honor, just one question for

10    me, which is, and I have not yet discussed this with Mr.

11    Clareman.  I'm not sure what the timing is on official

12    transcripts, but if it would help the Court, in light of the

13    fact that we are going to have witnesses on one day and an

14    argument on the other day, we're certainly happy to bring in

15    a court reporter and get Your Honor a real-time unofficial

16    transcript at the conclusion of the first day.

17              THE COURT:  I leave that all to you.  I will, I

18    obviously will -- it's obviously great to see real time, but

19    I think that's probably going to be really up to you all as

20    to what you'd like to do.  It's not something that I have

21    seen typically happen, particularly, and I don't mean this

22    with any disrespect to you all, but when we're talking about

23    a case that got filed in March and we're having a trial in

24    August, not 30 days after or something.  So I don't, I don't

25    mean this disrespectfully either because I clearly
```

Page 32

```
 1    understand people haven't been -- are owed lots of money

 2    here that has remained unpaid for a while.  But I didn't see

 3    this as a case where I had, like I had a confirmation

 4    hearing where I literally had to rule by 10 a.m. the next

 5    morning because there was Cayman proceeding going on.  And

 6    it was a multiday contested confirmation hearing.  I did,

 7    but I'm just saying to you -- and without a transcript,

 8    actually -- it would have been nice to have one in that

 9    circumstance, but sometimes we don't.  I didn't view this as

10    that, but if it is, it is.

11              MR. QURESHI:  It is not that, Your Honor.

12              THE COURT:  Okay.

13              MR. QURESHI:  Nothing further from me, Your Honor.

14              THE COURT:  All right.  I guess I'll ask Miss

15    Skipsey, did you have anything else you wanted to ask me?

16              MS. SKIPSEY:  No, Your Honor.  Thank you.

17              THE COURT:  Ok, Mr. Plaza, anything you wanted to

18    ask?

19              MR. PLAZA:  No, thank you, Your Honor.

20              THE COURT:  Okay.  Mr. Rudewicz, anything from

21    you?

22              MR. RUDEWICZ:  Nothing from me, Your Honor, thank

23    you.

24              THE COURT:  All right.  Okay.  Well I guess we

25    will look forward to seeing more information as it flows in.
```

Page 33

1    If you have more questions, feel free to reach out to

2    Griselda.  We'll obviously be looking to get more

3    information from you all, you know, starting end of next,

4    end of the week next week and, you know, flowing in

5    otherwise.  And I look forward to seeing you all in person

6    on August the 28th.

7              MR. CLAREMAN:  Thank you, Your Honor.

8              MR. QURESHI:  Thank Your Honor.

9              THE COURT:  All right.  So for the record, court

10   is adjourned till 2 p.m. my next calendar, and you all may

11   be excused.  And I wish you all a very good day.

12             (Whereupon these proceedings were concluded at

13   10:43 AM)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature: Sonya M. Ledanski Hyde]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 18, 2023