**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| TV Azteca, S.A.B. de C.V., *et al.*,[1] | ) ) ) | Case No. 23-10385 (LGB) |
|  | ) ) | (Jointly Administered) |
| Alleged Debtors. | ) ) |  |

### OPINION & ORDER

**APPEARANCES**

PAUL WEISS RIFKIND WHARTON GARRISON LLP
*Attorneys for the Alleged Debtors*
1285 6th Avenue
New York, New York 10019
By:   William A. Clareman
      Kelley A. Cornish
      Jay Cohen

AKIN GUMP STRAUSS HAUER FELD
*Attorneys for the Petitioning Creditors*
1 Bryant Park
New York, New York 10036
By:   David Giller
      Abid Qureshi
      Sarah Schultz

---

[1] The Alleged Debtors in these cases are: TV Azteca, S.A.B. de C.V.; Alta Empresa, S.A. de C.V.; Asesoría Especializada En Aviación, S.A. de C.V.; Equipo de Futbol Mazatlan, S.A. de C.V.; Producciones Dopamina, S.A. de C.V.; Azteca Records, S.A. de C.V.; Ganador Azteca, S.A.P.I. de C.V.; Azteca International Corporation; Operadora Mexicana De Televisión, S.A. de C.V.; Corporación de Asesoría Técnica y de Producción, S.A. de C.V.; Azteca Sport Rights LLC; Editorial Mandarina, S.A. de C.V.; Producciones Azteca Digital, S.A. de C.V.; Multimedia, Espectáculos y Atracciones, S.A. de C.V.; Producciones Especializadas, S.A. de C.V.; Productora De Televisión Regional De Tv Azteca, S.A. de C.V.; Servicios y Mantenimiento del Futuro en Televisión, S.A. de C.V.; Promotora de Futbol Rojinegros, S.A. de C.V.; TV Azteca Honduras, S.A. de C.V; Mazatlan Promotora de Futbol, S.A. de C.V.; Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V.; Stations Group, LLC; S.C.I. de México, S.A. de C.V.; Servicios Aéreos Noticiosos, S.A. de C.V.; Servicios Foráneos de Administración, S.A. de C.V.; Servicios Locales De Producción, S.A. de C.V.; Comercializadora de Televisión de Honduras, S.A. de C.V.; Incotel S.A.; TVA Guatemala S.A; Lasimex, S.A. de C.V.; Televisora del Valle de México, S.A. de C.V.; Azteca Comunicaciones Perú, S.A.C.; TV Azteca Global, S.L.U.; Redes Opticas, S.A.C; Servicios Especializados Taz, S.A. de C.V.

1

SHEPPARD MULLIN RICHTER HAMPTON LLP
*Attorneys for Diamond Films Netherlands Cooperatief USA*
30 Rockefeller Plaza, 39th Floor
New York, New York 10112
By:     Katherine Anne Boy Skipsey

RIKER DANZIG SCHERER HYLAND PERRETTI LLP
*Attorneys for the Bank of New York Mellon*
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
By:     Curtis M. Plaza

OFFICE OF THE UNITED STATES TRUSTEE
One Bowling Green, Room 534
New York, New York 10004-1408
By:     Daniel Rudewicz

**HON. LISA G. BECKERMAN**

**UNITED STATES BANKRUPTCY JUDGE**

**Decision Granting Alleged Debtors' Motion To Dismiss The Involuntary Petitions**

On March 20, 2023, Plenisfer Investments SICAV – Destination Value Total Return ("Plenisfer"), Cyrus Opportunities Master Fund II, Ltd. ("Cyrus"), and Sandpiper Limited ("Sandpiper," and collectively with Plenisfer and Cyrus, the "Petitioning Creditors") filed involuntary Chapter 11 petitions (each the "Involuntary Petition" and collectively the "Involuntary Petitions") against TV Azteca, S.A.B. de C.V. ("TV Azteca") and thirty-four TV Azteca subsidiaries (the "Guarantors," collectively with TV Azteca, the "Alleged Debtors") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Nos. 23-10385 – 23-10419 (Bankr. S.D.N.Y. Mar. 20, 2023).

Before the Court is the Alleged Debtors' Motion to Dismiss the Involuntary Petitions (the "Motion to Dismiss"). For the reasons set forth in this decision, the Court grants the Alleged Debtors' Motion to Dismiss.

### I.   BACKGROUND

#### A.   Indenture and Notes

TV Azteca is a "mass media and television company" incorporated in Mexico with its principal place of business in Mexico City, Mexico. JX-017 at ¶¶ 2, 6. TV Azteca has 50 direct and indirect subsidiaries. JX-018. Pursuant to an indenture dated August 9, 2017 (the "Indenture"), TV Azteca issued $400 million in unsecured notes (the "Notes"). JX-008. The Bank of New York Mellon serves as the trustee (the "Indenture Trustee"). *Id.* Various subsidiaries and affiliates of TV Azteca were guarantors under the Notes, including the Guarantors. *Id.* The Guarantors are the remaining subsidiaries and affiliates of TV Azteca who contractually guarantee the Notes. *Id.* Of the thirty-four Guarantors, three of the subsidiaries are organized in the United States; twenty-four in Mexico; two in Peru; two in Honduras; two in Guatemala; and one in Spain. JX-018.

Pursuant to Section 11.7 of the Indenture, the Indenture and Notes are governed by the laws of the State of New York. JX-008 at p. 98. The Indenture provides that "any suit, action or proceeding against it arising out of or relating to [the] Indenture (including the Note Guarantees) or the Notes, […] may be instituted in any court of the State of New York or any United States court sitting, in each case, in the Borough of Manhattan, The City of New York, New York, United States of America, and any appellate court from any court thereof [.]" *Id.*

#### B.   Default Under the Indenture and Notes

The Notes are scheduled to mature in 2024. JX-008. The terms of the Notes require TV Azteca to make semi-annual interest payments on August 9 and February 9 of each year. *Id.* The interest payments are at the rate of 8.250% per annum on the principal sum of $400 million. *Id.* TV Azteca made all interest payments due prior to February 9, 2021. ECF No. 61 at ¶ 23. TV Azteca did not make the interest payments due on February 9, 2021, August 9, 2021, and February 9, 2022, which the Alleged Debtors do not dispute. ECF No. 28 at ¶ 29. Additionally, TV Azteca

3

has failed to make the interest payments due on August 9, 2022 and February 9, 2023.[2] ECF No. 35 at ¶ 17.

### i. Notices of Acceleration

On May 3, 2022, a notice of acceleration was sent by certain beneficial owners of principal amounts of the Notes (the "Directing Holders")[3] to TV Azteca and the Indenture Trustee (the "Holders Acceleration Notice"). JX-013. In the Holders Acceleration Notice, the Directing Holders cite to Sections 6.1(a) and 6.2(a) of the Indenture, which govern Events of Default and Acceleration, respectively, to "declare the unpaid principal of (and premium, if any) and accrued and unpaid interest on all the Notes to be due and payable immediately[.]" JX-013 at p. 2.

On August 5, 2022, a notice of acceleration was sent by the Indenture Trustee on behalf of the Directing Holders to TV Azteca (the "Acceleration Notice"). JX-014. In the Acceleration Notice, the Indenture Trustee cites to Sections 6.1(a) and 6.2(a) of the Indenture to "declare[] the unpaid principal of $400,000,000, and accrued and unpaid interest on all the Notes to be due and payable immediately[.]" JX-014 at p. 1. On August 8, 2022, the Indenture Trustee issued an amendment to the Acceleration Notice (the "Amended Acceleration Notice") citing to Sections 6.1(a) and 6.2(a) of the Indenture to "declare[] the unpaid principal of $400,000,000, **premium,** accrued and unpaid interest, **and any other amounts owed** on the Notes, **and under the Indenture,** to be due and payable immediately[.]" JX-015 at p. 1 (emphasis added).

### ii. District Court Litigation

On August 26, 2022, the Indenture Trustee commenced a proceeding against TV Azteca and various guarantors of the Notes, including the Guarantors, in New York County Supreme Court by filing a Motion for Summary Judgment in Lieu of a Complaint (the "Motion for Summary

---

[2] The Court assumes the August 2023 interest payment was not made, but this is not clear from the record.

[3] Signatories to the May 3, 2022 Holder Acceleration Notice include the following beneficial owners: Cyrus Capital Partners, L.P.; Contrarian Emerging Markets, L.P.; Boston Patriot Summer St LLC; Contrarian EM II, LP; Emma 1 Master Fund, L.P.; E1 SP; EMMA 2 Fund, L.P.; Invesco Advisers, Inc.; Alliance United Insurance Company; Fidelity Hanover Street Trust; Fidelity Hastings Street Trust; FIAM Emerging Markets Debt Commingled Pool; Fidelity Emerging Markets Debt Multi-Asset Base Fund; Custody Bank of Japan, Ltd.; Fidelity Summer Street Trust: Fidelity Global High Income Fund; JNL/Fidelity Institutional Asset Management Total Bond Fund; Fidelity Summer Street Trust: Fidelity New Markets Income Fund; State Teachers Retirement System of Ohio; FIAM Emerging Market Debt Fund, LLC; Fidelity Salem Street Trust: Fidelity SAI Total Bond Fund; Fidelity Income Fund: Fidelity Total Bond Fund; Trinity Universal Insurance Company; United Insurance Company of America; and Variable Insurance Products Fund V: Strategic Income Portfolio.

4

Judgment"). *The Bank of New York Mellon, solely in its capacity as Trustee for TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024 vs. TV Azteca, S.A.B. de C.V., et al*, No. 653101/2022 (N.Y. Sup. Ct. Aug. 26, 2022) (the "State Court Action"); JX-002. In its Motion for Summary Judgment, the Indenture Trustee sought to recover "the full principal amount, premium, accrued and unpaid interest, and other amounts due on certain 8.250% Senior Notes due 2024 [….] issued by TV Azteca pursuant to that certain Indenture, dated as of August 9, 2017 by and between TV Azteca, the subsidiary guarantors party thereto [], the Trustee, and The Bank of New York Mellon, London Branch, as Principal Paying Agent[.]" JX-002 at pp. 1-2. The Indenture Trustee seeks: (i) "compensatory damages totaling the aggregate amount of accrued and unpaid interest based on Defendants' failure to make three interest payments, the full amount of interest up to the date of acceleration on August 5, 2022, and the full amount of principal due under the Indenture, collectively totaling $469,783,272;" (ii) the "premium consistent with the Redemption Premium at a rate of 104.125% of the principal as of the date of acceleration, August 5, 2022, as provided in Section 5.1 of the Indenture, for a premium totaling $16,500,000;" and (iii) the "prejudgment interest from the date of acceleration at a rate of 8.250% as provided in the Indenture, as well as post-judgement interest under the current New York State statutory interest rate of 9%;" amongst other relief. JX-002 at p. 16. The Indenture Trustee notes that "[a]t the date of filing, the unpaid interest including the Redemption Premium, and principal totaled $488,623,510." *Id.*

On September 23, 2022, TV Azteca and the Guarantors filed a Notice of Removal in the State Court Action. State Court Action at Dkt. No. 25. The case was removed to the United States District Court for the Southern District of New York and assigned to Judge Paul G. Gardephe. *The Bank of New York Mellon, solely in its capacity as Trustee for TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024 vs. TV Azteca, S.A.B. de C.V., et al*, No. 22-cv-08164 (S.D.N.Y. Sept. 23, 2022) (hereinafter, the "District Court Action").[4] On September 30, 2022, TV Azteca and the Guarantors filed a Motion to Compel the Indenture Trustee to file a Complaint in the District Court Action (the "Motion to Compel"). District Court Action at ECF No. 8. On October 14, 2022, the Indenture Trustee filed its Opposition to the Motion to Compel. District Court Action at ECF No. 14. On October 21, 2022, TV Azteca and the Guarantors filed their Reply to the Indenture Trustee's Opposition to the Motion to Compel. District Court Action at ECF No. 16. On October

---

[4] On October 14, 2022, the Indenture Trustee filed a Notice of Voluntary Dismissal of the District Court Action against certain guarantors. JX-003.

5

21, 2022, TV Azteca and the Guarantors filed a Letter Motion for Oral Argument on the Motion to Compel, which the court denied on December 13, 2022.  District Court Action at ECF Nos. 17, 23.  On March 21, 2023, a Suggestion of Bankruptcy was filed by the Indenture Trustee, staying the District Court Action.  JX-060.

### iii.  Mexican Court Litigation

On July 8, 2022, TV Azteca filed a complaint against certain holders of the Notes in the Ninth Civil Court of the Court of Justice for Mexico City (the "July 2022 Complaint").  JX-120; JX-121.  In response, the court issued a preliminary injunction on July 12, 2022 (the "July 2022 Injunction").  The July 2022 Injunction "suspend[s] [the] effects and consequences that could derive from the acceleration notices" and prohibits the parties from pursuing "[a]ny proceeding for the collection and/or payment of the notes."  ECF No. 70 at 31:2-16; JX-120; JX-121.  The July 2022 Injunction was later amended to include the Indenture Trustee, and extended on August 17, 2022, August 23, 2022, and May 17, 2023.  District Court Action at ECF No. 29.[5]  The Directing Holders and the Indenture Trustee have not been properly served with either the July 2022 Complaint or the July 2022 Injunction.  ECF No. 70 at 31:24-32:3; District Court Action at ECF No. 29.

TV Azteca then filed another complaint on September 22, 2022 in the Sixty-Third Civil Court of the Court of Justice of Mexico City (the "Sixty-Third Civil Court") against certain holders of the Notes and the Indenture Trustee (the "September 2022 Complaint").  JX-110.  In the September 2022 Complaint, TV Azteca cites primarily to the COVID-19 pandemic as the reason it and the Guarantors are unable to fulfill their obligations under the Indenture.  JX-110.  In response, the Sixty-Third Civil Court issued an ex parte injunction on September 27, 2022 (the "September 2022 Injunction").  JX-030.

On February 21, 2023, the Indenture Trustee was served with the September 2022 Complaint and September 2022 Injunction.  JX-108 at ¶ 11.  The noteholders named as defendants in the September 2022 Complaint were served with the September 2022 Complaint and September 2022 Injunction in June and July 2023.  District Court Action at ECF No. 29.  On May 15, 2023, the Indenture Trustee filed a Motion to Vacate the September 2022 Injunction (the "Motion to

---

[5] The Court takes judicial notice of filings in the District Court Action.

Vacate"). JX-117. On August 24, 2023, the Sixty-Third Civil Court issued an order acknowledging the Motion to Vacate and ordering TV Azteca to respond. ECF No. 64 at ¶¶ 4-5. On August 30, 2023, TV Azteca filed its opposition to the Motion to Vacate. ECF No. 73 at ¶ 4. The Motion to Vacate is currently being litigated before the Sixty-Third Civil Court. ECF No. 69 at 22:22-24.

## II. CHAPTER 11 PROCEEDINGS

### A. <u>Involuntary Petitions</u>

On March 20, 2023, the Petitioning Creditors filed Involuntary Petitions against the Alleged Debtors in the United States Bankruptcy Court for the Southern District of New York. Nos. 23-10385 – 23-10419 (Bankr. S.D.N.Y. Mar. 20, 2023). Each of the Involuntary Petitions filed against TV Azteca and the Guarantors named as Alleged Debtors is accompanied by declarations by each of the Petitioning Creditors. JX-001. In their declarations, the Petitioning Creditors outline the total amount of their claims. Plenisfer states in its declaration that it: "holds claims against [the] Debtor in the aggregate principal amount of at least $11,600,000 based upon certain of its holdings of the 8.25% senior unsecured notes due 2024 issued by the Debtor under that certain Indenture, dated as of August 9, 2017 (the "Notes"). Petitioning Creditor's holdings of Notes that are being relied upon for the purpose of satisfying the requirement of 11 U.S.C. § 303(b)(1) were acquired between November 9, 2021 and October 3, 2022, as reflected in the attached documents…. Petitioning Creditor also holds claims for accrued but unpaid interest on the Notes that are being relied upon for the purpose of satisfying the requirements of 11 U.S.C. § 303(b)(1), plus applicable fees, costs and other charges." JX-001 at pp. 5-6. Cyrus states in its declaration that it: "holds claims against [the] Debtor in the aggregate principal amount of at least $27,477,000 based upon certain of its holdings of the 8.25% senior unsecured notes due 2024 issued by the Debtor under that certain Indenture, dated as of August 9, 2017 (the "Notes"). Petitioning Creditor's holdings of Notes that are being relied upon for the purpose of satisfying the requirement of 11 U.S.C. § 303(b)(1) were acquired on November 31, 2021, December 1, 2021, December 9, 2021, December 10, 2021, May 9, 2022, May 11, 2022, September 20, 2022, October 26, 2022, and November 8, 2022, as reflected in the attached documents…. Petitioning Creditor also holds claims for accrued but unpaid interest on the Notes that are being relied upon for the purpose of satisfying the requirements of 11 U.S.C. § 303(b)(1), plus applicable fees, costs and

7

other charges." JX-001 at pp. 25-26. Sandpiper states in its declaration that it: "holds claims against [the] Debtor in the aggregate principal amount of at least $24,238,000 based upon certain of its holdings of the 8.25% senior unsecured notes due 2024 issued by the Debtor under that certain Indenture, dated as of August 9, 2017 (the "Notes"). An affiliate of Petitioning Creditor (the "Original Beneficial Owner") transferred its ownership of the Notes to Petitioning Creditor on March 13, 2023. Petitioning Creditor's holdings of Notes that are being relied upon for the purpose of satisfying the requirement of 11 U.S.C. § 303(b)(1) were acquired by the Original Beneficial Owner between from February 10, 2021 to November 15, 2022, as reflected in the attached documents…. Petitioning Creditor also holds claims for accrued but unpaid interest on the Notes that are being relied upon for the purpose of satisfying the requirements of 11 U.S.C. § 303(b)(1), plus applicable fees, costs and other charges." JX-001 at pp. 35-36.

On March 27, 2023, the Petitioning Creditors filed a Statement in Support of the Involuntary Petitions and a Motion for Joint Administration of the Chapter 11 cases. ECF Nos. 5, 8. On April 11, 2023, the Court entered an Order directing Joint Administration of the Chapter 11 cases. ECF No. 24.

### B. Briefing Schedule and Protective Order

On April 7, 2023, the Alleged Debtors and Petitioning Creditors submitted a joint stipulation setting a briefing schedule for the Motion to Dismiss (the "Joint Stipulation"). ECF No. 23. The Joint Stipulation was first amended and ordered on April 19, 2023, and then amended again and ordered on May 23, 2023. ECF Nos. 25, 32. The parties also submitted a stipulated Protective Order which was ordered by the Court on June 8, 2023. ECF No. 33.

### C. Motion to Dismiss the Involuntary Petitions

On April 25, 2023, the Alleged Debtors filed the Motion to Dismiss. ECF No. 26. In support of the Motion to Dismiss, the Alleged Debtors filed a Memorandum of Law in Support of the Motion to Dismiss, and the Declarations of William A. Clareman, Rafael Rodriguez Sánchez, and Luis Manuel C. Mejan. ECF Nos. 28-29; JX-017; JX-029.

On June 16, 2023, the Petitioning Creditors filed their Opposition to the Alleged Debtors' Motion to Dismiss (the "Opposition"). ECF No. 35. In support of their Opposition, the Petitioning Creditors filed the Declarations of Abid Qureshi, Fernando Del Castillo, and Jesus Angel Guerra

8

Mendez.  ECF No. 36; JX-108; JX-123.  Diamond Films Netherlands Cooperatief U.A. also filed a Response to the Motion to Dismiss and a Reservation of Rights.  JX-031.

On July 14, 2023, the Alleged Debtors filed their Reply Memorandum of Law in Support of the Motion to Dismiss (the "Reply").  ECF No. 42.  In support of their Reply, the Alleged Debtors filed the Declarations of William A. Clareman, Rafael Rodriguez Sánchez, and Luis Manuel C. Mejan.  ECF No. 43; JX-036; JX-037.  A Corrected Reply Declaration of William A. Clareman was filed on August 15, 2023.  ECF No. 52.

On August 18, 2023, the Petitioning Creditors filed the Supplemental Declaration of Jesus Angel Guerra Mendez.  ECF No. 55.  On August 21, 2023, the Alleged Debtors filed the Supplemental Declaration of Luis Manuel C. Mejan.  JX-064.

On August 25, 2023, the Parties filed a Joint Stipulation of Uncontested Facts.  ECF No. 61.  On August 28, 2023, the Petitioning Creditors filed the Supplemental Declaration of Fernando Del Castillo.  JX-395.  On September 7, 2023, the Petitioning Creditors filed the Second Supplemental Declaration of Fernando Del Castillo.[6]  ECF No. 73.

### D. Hearing on Motion to Dismiss the Involuntary Petitions

The Court held a two-day hearing on the Motion to Dismiss on August 28 and 29, 2023 (the "Hearing").  ECF Nos. 69-70.  The Court heard arguments from both counsel for the Alleged Debtors and the Petitioning Creditors, as well as testimony from the Alleged Debtors' expert, Professor Luis Manuel C. Mejan, and the Petitioning Creditors' expert, Jesus Angel Guerra Mendez. ECF Nos. 69-70. Additionally, during the Hearing, the Alleged Debtors and Petitioning Creditors consented to the admission of Joint Exhibits JX-001 through JX-395.  ECF No. 70 at 9:1-7.  At the conclusion of the Hearing, and per the suggestion of the Court, the parties agreed to participate in mediation.  ECF No. 69 at 61:15-16, 64:4-7, 156:2-4, 161:18-23.  The mediation was unsuccessful.  ECF No. 79.

## III. DISCUSSION

The Alleged Debtors raise four main arguments in support of their Motion to Dismiss.  *First*, the Alleged Debtors argue that the Involuntary Petitions should be dismissed because the

---

[6] The Alleged Debtors consented to the admission of the Second Supplemental Declaration of Fernando Del Castillo as part of the evidentiary record.  ECF No. 75 at 11:5-12.

9

Petitioning Creditors' claims are subject to a bona fide dispute, making the Involuntary Petitions deficient pursuant to Section 303(b)(1) of the Bankruptcy Code. ECF No. 28 at ¶¶ 8, 70-74. *Second*, the Alleged Debtors argue that the Involuntary Petitions should be dismissed for "cause" pursuant to Section 1112(b) because they were filed as a "tactical maneuver" in connection with the dispute pending before the District Court. ECF No. 28 at ¶¶ 9, 75-81. *Third*, the Alleged Debtors argue that the Court should dismiss the Involuntary Petitions at the pleadings stage pursuant to Section 305(a)(1) of the Bankruptcy Code because proceeding with the Chapter 11 cases in the United States would only serve to harm the Alleged Debtors and their creditors. ECF No. 28 at ¶¶ 2, 43-51. *Fourth*, the Alleged Debtors argue that the Involuntary Petitions should be dismissed on forum non conveniens grounds because Mexico is a "***necessary*** forum and ***only*** forum in which an in-court reorganization of the Alleged Debtors can be accomplished." ECF No. 28 at ¶¶ 3, 52-68.

### A. Existence of a Bona Fide Dispute

The Court will first address the Alleged Debtors' argument about the existence of a bona fide dispute with respect to the Petitioning Creditors' claims. If the Court were to find that the Petitioning Creditors' claims are subject to a bona fide dispute as to liability or amount, then the Court must dismiss the Chapter 11 cases.

Section 303(b)(1) of the Bankruptcy Code provides: "An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title- (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $18,600 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. § 303 (2023).

The Petitioning Creditors carry the initial burden of establishing a prima facie case that no bona fide dispute exists. *See e.g., In re Mountain Dairies, Inc.*, 372 B.R. 623, 631-33 (Bankr. S.D.N.Y. 2007) (finding that where the petitioning creditor did not "provide[] clear documentation of a sum certain that would be due from [the alleged debtor] after deducting the amounts in dispute," it failed to establish that the alleged debtor was "liable as to any particular amount," and therefore, failed to establish a prima facie case that no bona fide dispute exists); *see also In re*

10

*Taub*, 439 B.R. 261, 275 (Bankr. E.D.N.Y. 2010) (concluding that petitioning creditors failed to carry their initial burden where they did not "come forward with any calculations justifying the amount of the claim"); *see also In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 93-94 (Bankr. S.D.N.Y. 2020) (stating that the petitioning creditor "established a prima facie case with respect to the Alleged Debtor's liability in the amount of €546,386.00" for the first transaction where "the Alleged Debtor did not dispute the liability or amount of the Petitioning Creditor's claim" and for the second transaction by "attach[ing] the unpaid invoices . . . evidencing the Alleged Debtor's liability and nonpayment"); *see also In re Vicor Techs.*, 2013 Bankr. LEXIS 1416, at *18 (Bankr. S.D. Fla. 2013) (concluding that the petitioning creditors met their "initial burden through their separate declarations, the documents attached thereto, and Exhibit A to the Motion for Summary Judgment," which consisted of an accounts payable ledger showing the alleged debtor's unpaid claims).

The Petitioning Creditors rely upon the Involuntary Petitions, the supporting declarations filed by each of the Petitioning Creditors, the Statement in Support of the Involuntary Petitions, the Notes, the Indenture, the Holders Acceleration Notice, the Acceleration Notice, and the Amended Acceleration Notice as prima facie evidence of their claims. The Court finds that the Petitioning Creditors met their initial burden to establish a prima facie case.

"Once a [petitioning creditor's] prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2d Cir. 2003).

In the Motion to Dismiss, the Alleged Debtors point to the District Court Action as the evidence that the Petitioning Creditors' claims are subject to a bona fide dispute. ECF No. 28 at ¶¶ 8, 70-74.

In the District Court Action, the Alleged Debtors do not dispute that the entire principal amount plus two and a half years of unpaid interest is due and owing under the Notes and the Indenture. However, in litigation pending before the Mexican courts, the acceleration notices have been challenged by the Alleged Debtors (*see supra* Section I.B.iii.), notwithstanding the fact that the Indenture contains choice of law and forum selection clauses which would require any such challenge to be brought in a court located in the Borough of Manhattan. JX-008 at pp. 98-99. The parties specifically agreed in the Indenture to submit to the exclusive jurisdiction of the state and

11

federal courts located in the Borough of Manhattan with respect to any disputes regarding the Notes and the Indenture. *Id.* Accordingly, the Court disregards any contrary position taken by the Alleged Debtors in the Mexican courts since the parties have contractually agreed that any dispute arising under the Notes and the Indenture may be heard only by a state or federal court located in Manhattan.

In the District Court Action, the Indenture Trustee asserts that a redemption premium in the amount of $16,500,000 is due and owing as provided in Section 5.1 of the Indenture, in addition to the principal, unpaid interest, prejudgment interest and attorney's fees. District Court Action at ECF No. 1. The Alleged Debtors argue that no redemption premium is due and owing under the terms of the Indenture and New York law since there was no voluntary prepayment of the Notes. JX-140 at pp. 14-15; JX-142 at pp. 9-10. The issue as to whether a redemption premium is due and owing is clearly in dispute in the District Court Action.

The Alleged Debtors argue that because the entitlement to a redemption premium is disputed in the District Court Action, the claims of the Petitioning Creditors are subject to a bona fide dispute as to liability or amount and so, these Chapter 11 cases should be dismissed. ECF No. 28 at ¶¶ 8, 70-74. In response, the Petitioning Creditors argue that because they are not the plaintiff in the District Court Action and the Involuntary Petitions do not include a redemption premium as part of the Petitioning Creditors' claims, there is no bona fide dispute as to liability or amount with respect to the Petitioning Creditors' claims and therefore, the Chapter 11 cases should not be dismissed. ECF No. 35 at ¶¶ 73-74.

### B. Objective Test

When determining whether a bona fide dispute exists, courts, including those in the Second Circuit, apply an objective test. *In re BDC 56 LLC*, 330 F.3d at 117-18. This requires that a court analyze "whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt." *Id.* at 117 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). A bona fide dispute exists if "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Id.* "[T]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *Id.* (quoting *In re Lough*, 5.7 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). "[A] debtor's subjective belief

12

that the amount in controversy owed to the petitioning creditor is uncertain or unknown is insufficient for a court to find that a bona fide dispute exists." *In re CorrLine Int'l, LLC*, 516 B.R. 106, 146 (Bankr. S.D. Tex. 2014). Notably, while a court must determine whether a bona fide dispute exists, "[the court] is not to actually resolve the dispute." *In re BDC 56 LLC*, 330 F.3d at 118 (citing *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991) (internal quotations omitted)).

While pending litigation by itself "is insufficient to establish the existence of a bona fide dispute," the existence of "pending litigation over a claim strongly suggests" the presence of a bona fide dispute. *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 234 (2d. Cir. 2015) (internal quotations omitted) (citations omitted); *see also In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) ("The plethora of ongoing litigation that involves the same nucleus of facts speaks strongly to the likelihood that there is a bona fide dispute in this case."). As an example, the Fifth Circuit in *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)* found a bona fide dispute where the alleged debtor's claims in pending litigation "directly call[ed] into question [the alleged debtor's] liability under the [relevant] Note, including the amount it may owe." 741 F.3d 651, 658 (5th Cir. 2014); *but see In re J.B. Lovell Corp.*, 88 B.R. 459 (Bankr. N.D. Ga. 1988) (holding that because the anti-trust counterclaims against the petitioning creditor in prior litigation would not have affected the outcome of the suit, and the alleged debtor had already admitted to the amount owed under the contract with the petitioning creditor, the antitrust counterclaims did not create a bona fide dispute regarding the petitioning creditor's bankruptcy claim).

Additionally, a creditor may not concede that a debt is undisputed for the sole purpose of qualifying to bring an involuntary petition under Section 303(b)(1) of the Bankruptcy Code. *See In re Mountain Dairies, Inc.*, 372 B.R. at 632-33 (finding existence of a bona fide dispute where the alleged debtor "would have this Court find no dispute for the purposes of the threshold requirement of an undisputed claim" but there was "no doubt that the dispute over both the liability and amount of [the petitioning creditor's] claim against [the alleged debtor] would continue after the entry of an order for relief").

As noted by Judge Brown in *In re Koffee Kup Bakery, Inc.*, courts are split as to whether "a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means

13

there is a bona fide dispute as to the amount of the claim." No. 21-10168, 2022 WL 141516, at *7 (Bankr. D. Vt. Jan. 14, 2022) (internal quotations omitted) (citing *State Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019); *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 9 (1st Cir. 2016)). The only three circuit courts that have decided the issue (the First, Fifth, and Ninth Circuits) have concluded that "a creditor whose claim is the subject of a bona fide dispute as to liability or amount lacks standing to be a petitioning creditor under § 303(b)(1), even if a portion of their claim amount is undisputed[.]" *Id.* The Second Circuit has not ruled on this issue. However, the vast majority of decisions by courts within the Second Circuit have followed this approach.

Courts have held that, as a result of the 2005 amendment to Section 303(b), "any dispute regarding the amount of the petitioning creditors' claims that arises from the same transaction and is part of the underlying claim renders the claim subject to a *bona fide* dispute." *In re Rosenberg*, 414 B.R. 826, 846 (Bankr. S.D. Fla. 2009); *see also In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007) (citations omitted) ("[A]ny dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute."); *see e.g.*, *In re TPG Troy, LLC,* 492 B.R. at 160 (finding the existence of a bona fide dispute where the petitioning creditors argued the alleged debtor was liable for a debt based on an alter ego theory and the alleged debtor "'vigorously' dispute[d] the factual underpinnings of the Petitioners' alter ego claims"); *see e.g.*, *State Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1183 n.4, 1185, 1187 (9th Cir. 2019) (stating that "the statute's reference to 'amount' encompasses a dispute as to less than the entire amount" and finding existence of a bona fide dispute where the alleged debtor improperly inserted a "freestanding" undisputed claim into the petition but "the vast majority of its claim remained disputed"). The dispute must arise from "the objective facts of the agreements the Petitioners assert form the basis for their claims." *In re Aminian*, No. 07-12957, 2008 WL 793574, at *2 (Bankr. S.D.N.Y. Mar. 25, 2008) (reviewing the credit application from which the alleged dispute regarding guaranty provisions arose to determine that a bona fide dispute "exists as to whether there is a clear acknowledgment of the guaranty").

Whether a petitioning creditor is eligible to bring a claim under Section 303(b)(1) of the Bankruptcy Code "turns on whether a portion of [a] claim is the subject of a bona fide dispute as to amount or liability and, crucially, if so, whether the disputed and undisputed portions of [that] claim arise from separate transactions." *In re Koffee Kup Bakery, Inc.*, 2022 WL 141516, at *7

14

(finding the existence of a bona fide dispute where the undisputed "portion of [the petitioning creditor's] claim for unpaid invoices and the disputed portion of [the petitioning creditor's claim] for breach of contract damages stem[med]" from "the parties' single contract"). Where "the petitioning creditor and the alleged debtor have engaged in multiple transactions, a petitioning creditor may be permitted to rely on an undisputed claim where it arises from a separate transaction between the same parties." *In re Manolo Blahnik USA, Ltd.*, 619 B.R. at 92; *see also In re Guerra*, No. 13-51100, 2014 Bankr. LEXIS 580, at *10 n.2 (Bankr. N.D. Cal. Feb. 11, 2014) ("If the debtor's claim does not arise from the same transaction, the amount of a creditor's claim is not in dispute.").

Judge Glenn held in *In re Manolo Blahnik USA, Ltd.*, that the "undisputed portion of the Petitioning Creditor's claim in the amount of €546,386.00 on the First Neiman Marcus Purchase Order gives the Petitioning Creditor standing to file the Involuntary Petition." 619 B.R. at 98. Judge Glenn explained that the facts created a situation where "the Alleged Debtor's liability [arose] from two separate transactions—one disputed and one not disputed," and not one where there was a "dispute as to [some] amount of a single claim." *Id.* at 92. Because the petitioning creditor's claims arose from two separate invoices, "the Petitioning Creditor's undisputed claim . . . for the first transaction ma[de] the Petitioning Creditor eligible to file the Involuntary Petition." *Id.* at 93; *see also Fustolo*, 816 F.3d at 19-24 (finding that petitioning creditors qualified under Section 303(b)(1) where their claims against the alleged debtor arose from four separate promissory notes, and the debt was disputed as to only two of the notes); *see also In re Miller*, 489 B.R. 74, 83 (Bankr. E.D. Tenn. 2013) ("Nevertheless, even applying the law as argued by the Debtor, in this case, Tennessee State Bank would still qualify as a petitioning creditor because the amount of its claim is not based upon one single transaction but rather, is the aggregate sum of thirteen separate loan transactions between the Debtor and Tennessee State Bank, and only loan no. xxx2406 dated November 10, 2010, in the principal amount of $2,880,000.00 would be considered in dispute.").

Here, the dispute in the District Court Action arises from the same Notes and Indenture that form the basis for the Petitioning Creditors' claims in these Chapter 11 cases as set forth in the Involuntary Petitions. Nevertheless, the Petitioning Creditors argue that they are not seeking a redemption premium as part of their claims and thus, there is no bona fide dispute, although they know that the Indenture Trustee is seeking to recover a redemption premium in the District Court

15

Action for the benefit of all holders of the Notes. And how do the Petitioning Creditors know that the Indenture Trustee is seeking a redemption premium? Because the Petitioning Creditors were part of the holders of the Notes who directed the Indenture Trustee to send the Acceleration Notice on August 5, 2022 and an Amended Acceleration Notice on August 8, 2022 which included the demand for the payment of a premium. JX-014; JX-015; ECF No. 8 at ¶ 2. In addition, counsel for the Petitioning Creditors in these Chapter 11 cases is acting as counsel for the Indenture Trustee in the District Court Action. JX-004.

The Petitioning Creditors' counsel admitted in closing argument that if the Court denied the Motion to Dismiss, there would likely be a bar date set by order of the Court and that the Indenture Trustee would file the proof of claim on behalf of all of the holders of the Notes. ECF No. 69 at 84:17-25. The Indenture specifically provides for that in Section 6.9. JX-008 at pp. 74-75. There is nothing in the record to indicate that a proof of claim or proofs of claim filed by the Indenture Trustee in these Chapter 11 cases would not include a request for the disputed premium, given the position taken by the Indenture Trustee in the pleadings filed before the District Court.

What the Petitioning Creditors are asking the Court to do is to disregard the District Court Action brought by the Indenture Trustee who is a fiduciary acting on behalf of all of the holders of the Notes, including the Petitioning Creditors, where the damages sought include a redemption premium. *See BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375, 401 (S.D.N.Y. 2011) ("After an event of default, the indenture trustee's fiduciary duties expand by operation of New York common law, [….] 'the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations of exculpatory provisions contained in the indenture[.]'" (citation omitted)); *see also LNC Inv., Inc. v. First Fidelity Bank, Nat. Ass'n*, 935 F. Supp. 1333, 1347 (S.D.N.Y. 1996) ("After an event of default, 'it is … only the trustee who is able to act swiftly and effectively to assure … that the rights of the bondholders to recover what they are owed will ultimately be vindicated.'" (citation omitted)).

While this Court could not find a case with the exact facts, the facts in these Chapter 11 cases are similar to the facts in *In re Koffee Kup Bakery, Inc.*, where there is one contract under which both disputed and undisputed claims arise. 2022 WL 141516, at *7. Here, there is no dispute that the holders of the Notes are owed the entire principal amount plus unpaid interest. ECF No. 69 at 81:25-82:1. But, there is a dispute as to whether the holders of the Notes are entitled

16

to a redemption premium. JX-140, pp. 14-15; JX-142, pp. 9-10. The Indenture Trustee sued to collect the principal, unpaid interest, the redemption premium, and additional amounts under the Notes and the Indenture on behalf all of the holders of the Notes. District Court Action at ECF No. 1. The Petitioning Creditors' claims are solely comprised of amounts owed under the Notes and the Indenture. JX-001. But, the Petitioning Creditors are asking the Court to ignore the dispute over a redemption premium in the District Court Action because that litigation was not brought by the Petitioning Creditors directly, but rather by the Indenture Trustee as a fiduciary on behalf of all of the holders of the Notes, including the Petitioning Creditors.

The Court cannot blithely ignore the District Court Action when it knows that, if it were to do so, the proofs of claim that would be filed in these Chapter 11 cases by the Indenture Trustee as a fiduciary on behalf of all of the holders of the Notes will include a redemption premium (unless the automatic stay is modified and the District Court determines that no redemption premium is due and owing prior to the deadline for filing proofs of claim). The record reflects that the proofs of claim which would be filed by the Indenture Trustee would differ from the claims asserted by the Petitioning Creditors in the Involuntary Petitions because such proofs of claim would include the redemption premium, attorney's fees and other requested costs.

In addition, given these facts, the Petitioning Creditors cannot voluntarily disclaim their entitlement to a redemption premium so that their claims are not subject to a bona fide dispute. *See In re Mountain Dairies, Inc.*, 372 B.R. at 632-33. Perhaps if the claims held by the Petitioning Creditors arose under a contract where they were the only contract counterparties, it might be possible for the Petitioning Creditors to execute a writing where their entitlement to an amount owed under the contract is waived forever. However, under the Notes and the Indenture, the Petitioning Creditors are not the only contract counterparties and thus, the Petitioning Creditors alone cannot determine the amounts due and owing under those documents.

For all of these reasons, the Court finds that the Petitioning Creditors' claims are subject to a bona fide dispute and thus, the Chapter 11 cases must be dismissed.

### C. Additional Arguments Raised By Alleged Debtors

The Court chooses to stop here in its analysis. It could, but has chosen not to, address the Alleged Debtors' three other arguments as to why these Chapter 11 cases should be dismissed. The Court's rationale for not addressing the additional arguments is that it is possible, after Judge

17

Gardephe rules in the District Court Action, that the Petitioning Creditors may choose to refile involuntary petitions against the Alleged Debtors, whether in this jurisdiction or elsewhere. In the interim, it is possible that significant facts may change, including those regarding the Alleged Debtors' current operations and financial condition and/or a possible restructuring outside of a Chapter 11 proceeding. The Court has chosen not to constrain itself, another judge in this Court or a judge in another court in the future by ruling on the three remaining arguments as to why involuntary petitions should be dismissed.

## IV.    CONCLUSION

The Alleged Debtors' Motion to Dismiss is granted. Counsel for the Alleged Debtors shall submit a proposed form of order to the Court consistent with this decision. Counsel for the Petitioning Creditors must be given the opportunity to comment on the proposed form of order before it is submitted to the Court.

Dated:  November 20, 2023
       New York, New York

                                      */s/ Lisa G. Beckerman*
                                      **THE HONORABLE LISA G. BECKERMAN**
                                      **UNITED STATES BANKRUPTCY JUDGE**